No. 22-1023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

BROWN GOLDSTEIN LEVY LLP

and

JOSHUA R. TREEM,

*Appellants*,

v.

FEDERAL INSURANCE COMPANY,

*Appellee.*

_____

Appeal From the United States District Court
For the District of Maryland
(Northern Division)

_____

BRIEF OF APPELLANTS
BROWN GOLDSTEIN LEVY LLP AND JOSHUA R. TREEM

_____

John Thorpe Richards, Jr.
BOGORAD & RICHARDS PLLC
209 Madison Street, Suite 501
Alexandria, Virginia 22314
Phone: (703) 457-7820
Fax: (202) 457-7824

*Attorney for Appellants*
BROWN GOLDSTEIN LEVY LLP
and JOSHUA R. TREEM

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _22-1023_     Caption: _Brown Goldstein Levy LLP, et al., v. Federal Insurance Company_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Brown Goldstein Levy LLP_
(name of party/amicus)

_____

 who is _____an Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO

2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☑YES ☐NO
If yes, identify entity and nature of interest:

Federal Insurance Company is a wholly-owned subsidiary of Chubb INA Holdings Inc., which is 80% owned by Chubb Group Holdings Inc. and 20% owned by Chubb Limited. Chubb Group Holdings Inc. is a wholly-owned subsidiary of Chubb Limited, which is publically traded on the NYS (CB). No publically held corporation owns 10% or more of Chubb Limited.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:  /s/ John Thorpe Richards, Jr.                    Date:      February 4, 2022

Counsel for:  Brown Goldstein Levy LLP

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1023     Caption: Brown Goldstein Levy LLP, et al., v. Federal Insurance Company

Pursuant to FRAP 26.1 and Local Rule 26.1,

Joshua R. Treem
(name of party/amicus)

_____

who is _____ an Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☑YES ☐NO
    If yes, identify entity and nature of interest:

    Federal Insurance Company is a wholly-owned subsidiary of Chubb INA Holdings Inc., which is 80% owned by Chubb Group Holdings Inc. and 20% owned by Chubb Limited. Chubb Group Holdings Inc. is a wholly-owned subsidiary of Chubb Limited, which is publically traded on the NYS (CB). No publically held corporation owns 10% or more of Chubb Limited.

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ John Thorpe Richards, Jr.                Date:    February 4, 2022

Counsel for: Joshua R. Treem

- 2 -

Print to PDF for Filing

# Table of Contents

Page(s)

Disclosure Statements ...................................................................i

Table of Contents ........................................................................v

Table of Authorities....................................................................viii

STATEMENT OF JURISDICTION...............................................1

ISSUES PRESENTED FOR REVIEW .......................................1

    1.   Are search and seizure warrants and government recusal demands excluded from the definition of "Claim" used in the Chubb Policy? ...........................................1

    2.   Does the definition of "Claim" in the Chubb Policy exclude "criminal matters" and grand jury investigations?..........................................................................1

    3.   Were the legal fees expended by the plaintiffs in contesting the seizure of documents from their law offices and responding to government recusal demands and a grand jury investigation excluded from the Chubb Policy's definition of "Loss"?.........................2

STATEMENT OF THE CASE .....................................................2

  A.   Introduction ...............................................................2

  B.   Insurance Policy at Issue ...........................................3

  C.   The Government Demands That Treem Withdraw as Counsel for a Client of His Law Firm. .........................5

  D.   Search and Seizure at Insured Lawyers' Offices .........6

  E.   Target Letter Issued to Treem .....................................9

F.     Notice to Insurer and Search Warrant Litigation ....................... 9

G.     Additional Written Demands for Recusal ................................. 10

H.     Appeal and Additional Costs of Search Warrant Litigation ............................................................................ 11

I.     Denial of Coverage ................................................................. 11

J.     Treem Included in Superseding Indictment ............................. 12

K.     Proceedings in the District Court ............................................ 12

SUMMARY OF THE ARGUMENT ................................................. 14

ARGUMENT ................................................................................... 17

I.     Standard of Review ................................................................. 17

II.     The District Court Erred in Dismissing the Complaint Which Stated a Claim Under Maryland Law for Breach of Contract and Declaratory Relief Based on the Insurer's Denial of Coverage. ............................................ 18

    A.     The Search and Seizure Warrant on the Law Firm was a "Written Demand or Written Request" for "Non-monetary Relief" Covered by the Chubb Policy. ............................................................................. 19

    B.     In Denying Coverage the District Court Relied on Authorities That Are Inconsistent With Maryland Law. .................................................................................. 22

       1.     The District Court's Rejection of Applicable Caselaw Was Unfounded. ............................................ 25

       2.     The Chubb Policy Does Not Exclude Written Demands for Non-Monetary Relief Made in Criminal Cases. ............................................................ 29

       3.     The District Court Failed to Consider Whether a Reasonably Prudent Person

Would Understand the Definition of "Claim"
Used in the Chubb Policy Was Susceptible to
More Than One Possible Meaning............................... 33

4. The Conflicting Interpretations in Multiple
Judicial Opinions Suggests That the
Definition of "Claim" in the Chubb Policy Is
Ambiguous and Should Therefore be
Construed in Favor of Coverage. .................................. 36

C. The Recusal Letters Were Written Demands or
Written Requests for "Non-Monetary Relief" That
Were Not Excluded by the Definition of "Loss.".................. 38

1. The District Court Assumed That the
Recusal Letters Were Demands for Non-
monetary Relief. ............................................................. 38

2. Treem's Legal Fees Incurred as a Result of
the Recusal Letters Were Not Excluded
From the Definition of "Loss" as Defense
Costs "to Comply With an Agreement to
Provide Relief.".............................................................. 39

3. The Recusal Letters Were Not Excluded
From the Definition of "Loss" Because They
Make Demands or Requests That Were "Not
Then a Claim." ............................................................... 41

D. The District Court Erred in Dismissing the
Complaint on the Grounds that the Plaintiffs'
Attorneys' Fees Were Not "Defense Costs"
Included in the Policy Definition of "Loss." ......................... 42

Conclusion ............................................................................................. 44

Certificate of Compliance ..................................................................... 46

Certificate of Service ............................................................................ 46

vii

# Table of Authorities

Page(s)

## Cases

*Agilis Benefit Servs. LLC v. Travelers Cas. & Sur. Co. of Am. (Agilis I)*, No. 5:08-cv-213,
2010 WL 11595321 (E.D. Tex. Feb. 24, 2010) ......................... 20, 25, 27

*Agilis Benefit Servs. LLC v. Travelers Cas. & Sur. Co. of Am. (Agilis II)*,
2010 WL 8573372 (E.D. Tex. Apr. 30, 2010) ......................... 20, 23, 27

*Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, No. 17-cv-8220,
2018 WL 2431969 (N.D. Ill May 30, 2018) ......................... 30

*Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's*,
788 F.3d 375 (4th Cir. 2015) ......................... 18, 38

*Catalina Ents., Inc. Pension Tr. v. Hartford Fire Ins. Co.*,
67 F.3d 63 (4th Cir. 1995) ......................... 40

*Connors v. Gov't Emps. Ins. Co.*,
113 A.3d 595 (Md. 2015) ......................... 19, 33, 37

*Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.*, No. 06-CV-13105,
2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008) ......................... 23

*Educ. Affiliates Inc. v. Fed. Ins. Co.*, No. CV -JFM-15-1624,
2016 WL 4059159 (D. Md. July 28, 2016) ......................... 21, 25

*Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*,
699 A.2d 482 (Md. App. 1997) ......................... 18

*Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.*,
951 F. Supp. 2d 826 (D. Md. 2013) ......................... 21, 25, 34

viii

*In re: Search Warrant Issued June 13, 2019*,
   942 F.3d 159 (4th Cir. 2019)...................................................... passim

*Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co.*,
   828 F.2d 242 (4th Cir. 1987).................................................. 22, 28, 29

*Klein v. Fid. & Deposit Co. of Am.*,
   700 A.2d 262 (Md. App. 1997) ............................................... 20, 22, 25

*LCS Corr. Servs., Inc. v. Lexington Ins. Co.*,
   800 F.3d 664 (5th Cir. 2015)............................................................. 32

*Lokhova v. Halper*, No. 21-1655,
   2022 WL 1009208 (4th Cir. Apr. 5, 2022) ........................................ 32

*Loughrin v. United States*,
   573 U.S. 351 (2014)........................................................................... 32

*MBIA Inc. v Fed. Ins. Co.*,
   652 F.3d 152 (2d Cir. 2011) ............................................................. 23

*Megonnell v. United Servs. Auto. Ass'n.*,
   796 A.2d 758 (Md. 2002)................................................................... 30

*Minuteman Int'l, Inc. v.*
*Great Am. Ins. Co.*, No. 03-C-6067,
   2004 WL 603482 (N.D. Ill. Mar. 22, 2004) .................................. 21, 27

*Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*,
   379 F. Supp. 3d 554 (E.D. Tex. 2019).............................. 21, 23, 24, 32

*Patriarch Partners, LLC v. AXIS Ins. Co.*,
   No. 16-cv-2277 (VEC),
   2017 WL 4233078 (S.D.N.Y. Sep. 22, 2017) ................................ 23, 24

*Plank v. Cherneski*,
   231 A.3d 436 (Md. 2020)................................................................... 32

*Polychron v. Crum & Forster Ins. Cos.*,
   916 F.2d 461 (8th Cir. 1990)............................................................. 21

*Prot. Strategies, Inc. v. Starr Indem. & Liab. Co.*,
     No. 1:13-CV-00763,
     2013 WL 10724338, (E.D. Va. Sept. 10, 2013) ........................ 20, 25, 26

*RSUI Indem. Co. v. Desai*, No. 8:13-CV-2629-T-30TGW,
     2014 WL 4347821 (M.D. Fla. Sept. 2, 2014) ........................... 24, 25, 30

*Schlather, Stumbar, Parks & Salk, LLP v. One Beacon*
     *Ins. Co.*, No. 5:10-cv-0167,
     2011 WL 6756971 (N.D.N.Y. Dec. 22, 2011) ...................................... 34

*SNL Fin., LC v. Phila. Indem. Ins. Co.*,
     455 F. App'x 363 (4th Cir. 2011) ...................................................... 35

*Sullins v. Allstate Ins. Co.*,
     667 A.2d 617 (Md. 1995) ................................................................... 37

*SVF Riva Annapolis, LLC v. Gilroy*,
     187 A.3d 686 (Md. 2018) ................................................................... 32

*Syracuse Univ. v. Nat'l Union Fire Ins. Co.*,
     975 N.Y.S.2d 370 (N.Y. Sup. Ct.) .......................................... 21, 23, 27

*Syracuse Univ. v. Nat'l Union Fire Ins. Co.*,
     976 N.Y.S.2d 921 (N.Y. App. Div. 2013) .......................................... 21

*TIG Ins. Co. v. Monongahela Power Co.*,
     58 A.3d 497 (Md. App. 2012) ............................................................ 18

*Tucker v. Fireman's Fund Ins. Co.*,
     517 A.2d 730 (Md. 1986) ................................................................... 34

*Uncork and Create LLC v. The Cincinnati Ins. Co.*,
     27 F.4th 926 (4th Cir. 2022) .................................................. 17, 40, 42

*United States v. Treem*,
     Case No. 1:19-cr-00449-LO-2 (D. Md., Dec. 28, 2021),
     ECF No. 494 ........................................................................................ 2

*United States v. Woods*,
     571 U.S. 31 (2013) ............................................................................ 32

*W.F. Gebhardt & Co., Inc. v. Am. Eur. Ins. Co.,*
    252 A.3d 65 (Md. App. 2021) ....................................................... 17, 30


## Statutes

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1332 ............................................................................... 1


## Rules

Fed. R. App. P. 4(a)(1)(A). .............................................................. 1

Fed. R. Civ. P. 12(b)(6) ...................................................... 1, 13, 14, 40

Fed. R. Crim. P. 41(c) ..................................................................... 6

Fed. R. Crim. P. 41(g) .......................................................... 10, 16, 43

Md. Att'ys R. Pro. Conduct R. 19-301.6 ....................................... 8


## Treatises

12 Maryland Law Encyclopedia, *Insurance* § 87 (Dec.
    2021 Update) ........................................................................... 19

12 Maryland Law Encyclopedia, *Insurance* § 93 (Dec.
    2021 Update) ........................................................................... 19

16 Williston on Contracts § 49:18 (4th ed., Nov. 2021
    Update) ..................................................................................... 37

2 Holmes's Appleman on Insurance, 2d § 7.2 (1996) ............................ 30

**Other Authorities**

A. Scalia & B. Garner, Reading the Law: The
Interpretation of Legal Texts (2012) .............................................31, 32

Charles C. Marvel, Annotation, *Division of Opinion
Among Judges on Same Court or Among Other Courts
or Jurisdictions Considering Same Question, As
Evidence That Particular Clause of Insurance Policy Is
Ambiguous*, 4 A.L.R.4th 1253 (1981) ...................................................37

Restatement of the Law of Liability Insurance § 22 (2019) ....................4

Websters Third New International Dictionary of the
English Language Unabridged (1986) ................................................28

## STATEMENT OF JURISDICTION

This case was initiated on May 26, 2020, by Brown Goldstein Levy LLP ("BGL"), a Maryland law firm with a principal place of business in Maryland, and one of its partners, Joshua Treem, a citizen of Maryland. JA 146, 149-50. The defendant, the Federal Insurance Company ("Insurer"), is an Indiana corporation with a principal place of business in Indianapolis, Indiana. JA 150. The district court had jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeded $75,000.00 and the dispute was between citizens of different states.  JA 149-50. This appeal is from the final order of the district court entered on December 2, 2021, dismissing the plaintiffs' complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). JA 240-69. Notice of the appeal was timely filed on December 30, 2021. J.A. 270; Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.    Are search and seizure warrants and government recusal demands excluded from the definition of "Claim" used in the Chubb Policy?

2.    Does the definition of "Claim" in the Chubb Policy exclude "criminal matters" and grand jury investigations?

3.    Were the legal fees expended by the plaintiffs in contesting the seizure of documents from their law offices and responding to government recusal demands and a grand jury investigation excluded from the Chubb Policy's definition of "Loss"?

## STATEMENT OF THE CASE

### A.    Introduction

On December 28, 2021, Joshua Treem, a partner at BGL, was acquitted by a unanimous jury of all counts in a criminal indictment charging him with obstruction of justice arising out of his representation of his client, Kenneth Ravenell. *United States v. Treem*, Case No. 1:19-cr-00449-LO-2 (D. Md., Dec. 28, 2021), ECF No. 494. Before his acquittal, Treem's law firm had to litigate the propriety of a search and seizure warrant executed at its law offices that was the subject of this Court's decision in *In re: Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019)(reversing and remanding denial of relief requested by BGL). In this case BGL and Treem seek payments from their Insurer for the hundreds of thousands of dollars they incurred in defense costs for, *inter alia,* responding to the government's overbroad and improperly issued search warrant, and its written demands that Treem withdraw from the representation of his clients.

2

### B.    Insurance Policy at Issue

On November 24, 2018, the Insurer issued its "Chubb Pro Lawyers Professional Liability" policy (hereinafter "Chubb Policy") to BGL. JA 17, 148. It did so in exchange for a premium payment of $102,042.00. *Id.* The Chubb Policy is a "claims made" policy covering the period from November 21, 2018, to November 21, 2019. JA 23, 25. The Chubb Policy promises that the Insurer "shall pay **Loss** on behalf of an **Insured** on account of any **Claim** first made against such **Insured** during the **Policy Period**." JA 25.[1]

As a "defense-cost-indemnification" policy, the Chubb Policy requires its insureds, and not the Insurer, to defend against any claims covered by the policy, JA 32, but also provides that the Insurer "shall, upon written request, advance on a current basis **Defense Costs** owed under this Policy." JA 33; *see* Restatement of the Law of Liability Insurance § 22 (2019)("Defense-Cost-Indemnification Policies"). Both BGL and Treem are "**Insured[s]**" under the Chubb Policy. JA 25-26, 150.

The Chubb Policy defines a "**Claim**" as:

(1)    any of the following:

---

[1]    Terms in **bold** in the Chubb Policy indicate that they are defined within the policy.

3

(a)    a written demand or written request for monetary damages or non-monetary relief;

(b)    a written demand for arbitration;

(c)    a civil proceeding commenced by the service of a complaint or similar pleading; or

(d)    a formal civil administrative or civil regulatory proceeding (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(2) a written request received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in paragraph (1) above.

JA 25.

The Chubb Policy defines "**Wrongful Act**" as "any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by the **Firm** or by an **Insured Person** acting in his or her capacity as such on behalf of the **Firm**." JA 28.

"**Loss**" is defined as "the amount that an **Insured** becomes legally obligated to pay as a result of any covered **Claim**, including but not

4

limited to damages …, judgments, settlements, prejudgment and post-judgment interest and **Defense Costs**." JA 25. As defined, "**Loss** does not include: … any cost incurred by an **Insured** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief." JA 27. Nor does the definition of "**Loss**" include "any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, demand or request that is not then a **Claim** even if such matter subsequently gives rise to a **Claim**." *Id.*

"**Defense Costs**" include "that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses … incurred in defending any **Claim**…." JA 26.

## C. The Government Demands That Treem Withdraw as Counsel for a Client of His Law Firm.

For about three years prior to the events giving rise to this case, Treem handled the representation of Ravenell in an investigation conducted by federal authorities in Maryland. JA 64, 147, 152. But on January 11, 2019, the United States Attorney's Office for the District of Maryland ("USAO") issued a letter demanding that Treem withdraw and recuse himself from representing Ravenell. The grounds for the demand

5

was that Treem was himself a subject of the government's investigation of Ravenell. JA 51, 152, 156. Treem engaged counsel in connection with the government's investigation and to advise him of his responsibilities in response to the government's demand. JA 97, 149.

### D.    Search and Seizure at Insured Lawyers' Offices

On June 13, 2019, the USAO requested and obtained a search and seizure warrant for BGL's law offices. JA 53, 152-53. The warrant was executed on June 18, 2019. JA 75, 150-51. To obtain the search and seizure warrant the government had to make a written request. JA 152. Although not fully available to the parties during the course of the litigation at hand, JA 65, 77, the Application for a Search Warrant, in which the federal law enforcement officer "request[ed] a search warrant" against BGL, purported to satisfy Fed. R. Crim. P. 41(c) in seeking, "evidence of a crime," "contraband, fruits of crime, or other items illegally possessed," and "property designed for use, intended for use, or used in committing a crime." *In re: Search of Brown Goldstein Levy LLP*, Case

No. 1:19-mj-02155-TCB, (D. Md, Jun. 13, 2019), ECF No. 1-2 at 5;[2] JA 152-53 ("request for a search warrant"); JA 160.

The documents seized by the government far exceeded the limited scope of its investigation of Treem and his former client. JA 153. For example, the government seized tens-of-thousands of law firm emails containing privileged materials and other client confidences that bore no conceivable relationship to the grand jury's investigation. JA 86-87, 153. The government seized all of Treem's emails, regardless of whether they related to Ravenell or had any possible relevance to the grand jury investigation. *Id.* They seized Treem's laptop and cell phone. JA 153. The government seized more than 37,000 emails from Treem's inbox (totaling 9,124,544 KB). *Id.* Of those emails, only 62 emails were from Ravenell or contained his last name. *Id.* Of over 15,000 emails the government seized from Treem's outbox, only 54 emails were sent to Ravenell or contained his last name. *Id.* Of the approximately 52,000 emails seized from

---

[2]     The complete application and redacted search and seizure warrant were sealed and withheld from BGL and Treem until shortly before the commencement of his trial — and well after the completion of the briefing in the case below — but they are now publicly available and subject to judicial notice. Fed. R. Evid. 201. The balance of the filings in that case remain under seal.

Treem's inbox and outbox, 0.2% were to or from Ravenell or contained his last name. *Id. See generally, In re Search Warrant,* 942 F.3d at 166-172.

Included in the seizure were tens-of-thousands of emails and documents on Treem's cellphone concerning BGL's other clients. JA 154. These included numerous emails between Treem and his colleagues at BGL concerning cases involving other BGL clients that had nothing to do with the government's investigation of Ravenell and Treem. *Id.* Moreover, the emails and other seized documents that related to Ravenell contained confidential and privileged information. *Id.*

Both BGL and Treem were required by the most basic rules of professional responsibility to take all lawful steps to contest the government's seizure of "information relating to representation" of their clients, especially privileged and work product information. JA 155; Md. Att'ys R. Pro. Conduct R. 19-301.6. Indeed, the importance of the confidentiality, privilege and work product obligations was extensively reviewed in this Court's decision *In re Search Warrant*, 942 F.3d at 173-74, 180-81.

In executing the search and seizure warrant, the government demanded the cooperation of BGL's employees. JA 154. Among other

8

things, the government demanded that BGL's information technology consultant extract electronic records from the firm's server concerning Treem and Ravenell. JA 86-87, 154. The Assistant United States Attorney ("AUSA") improperly requested that BGL provide a list of its clients, and the search warrant purported to authorize the government to engage in *ex parte* communications with BGL's clients to seek a waiver of their privileges. *In re Search Warrant*, 942 F.3d at 180. This Court specifically stressed the irreparable harm to Treem and BGL as a result of the way the search warrant was executed. *Id.* at 175 n.16.

### E.    Target Letter Issued to Treem

On the same day the government executed the search warrant, the USAO sent Treem's lawyer a "target letter" establishing that Treem was a "putative defendant." JA 55, 152. In addition to the January 11th letter, JA 51, and the application for the search warrant itself, the issuance of the "target letter" made clear that the search warrant was issued in connection with an alleged "Wrongful Act" as defined in the Chubb Policy. JA 28, 55, 151, 153, 160, 167.

### F.    Notice to Insurer and Search Warrant Litigation

The next day, on June 19, 2019, BGL gave notice to its insurer, JA 61, 158, and Treem and BGL engaged counsel to defend against the

overbroad and improperly authorized search and seizure. JA 148-49. Failing in their effort to seek cooperative return of the improperly seized materials, JA 60, 65, BGL followed the procedures required by Fed. R. Crim. P. 41(g) and filed a motion for return of property and temporary restraining order in the Magistrate Judge matter that authorized the search warrant. JA 12, 63-82, 155-56; *In re: Search of Brown Goldstein Levy, LLP*, Case No. 1:19-mj-02155-TCB, (D. Md, Jun. 26, 2019), ECF No. 8; *In re: Search Warrant*, 942 F.3d at 168.

## G.    Additional Written Demands for Recusal

While BGL was disputing the search warrant in the district court, but before the appeal to this Court, JA 12, the USAO further expanded its written demands on Treem, insisting that he either withdraw from representing another client in a pending case or obtain an in-court waiver by that client of the conflict asserted by the USAO. JA 57-58, 84. The government subsequently filed a motion in that client's case to enforce its demand, and a hearing was held on the motion. JA 157. Treem engaged counsel to advise and represent him in response to those demands and similar demands in other cases. The USAO's demands

caused Treem irreparable harm by disabling him from representing clients adverse to the federal government. JA 157-58.

## H. Appeal and Additional Costs of Search Warrant Litigation

The search warrant litigation required BGL to take a successful appeal to this Court, *In re: Search Warrant*, 942 F.3d 159, as well as conduct extensive litigation on remand, including proceedings before a court appointed special master. JA 11-15, 148, 155-56, 170-88. BGL's Defense Costs in the search and seizure warrant litigation alone exceeded $230,000. JA 161.

## I. Denial of Coverage

The Insurer initially denied coverage on July 10, 2019. JA 89.  BGL disputed that denial, JA 89-93, supplemented its claim, JA 97-99, 143-45, 156, and requested that the Insurer advance Defense Costs as provided by the Policy. JA 159. The Insurer took the position that the search warrant was not a "Claim" as defined by the Chubb Policy, *id.*, and that "Defense Costs, 'does not include … any amount incurred by an insured in the defense or investigation of any … demand or request that is not then a Claim.'" JA 143. The Insurer gave its final denial of coverage on March 6, 2020. JA 160.

11

### J.    Treem Included in Superseding Indictment

On December 17, 2020, the government brought a superseding indictment adding Treem as a defendant to its pending case against Ravenell. JA 190. The Superseding Indictment alleged that Treem had conspired with his former client to obstruct justice. JA 190-239. The superseding indictment further confirmed that the government's written demands and search warrant were based on alleged acts by Treem in performance of his professional duties. *E.g.,* JA 207. Treem was ultimately acquitted on all counts. *United States v. Treem*, Case No. 1:19-cr-00449-LO-2 (D. Md., Dec. 28, 2021), ECF No. 494.

### K.    Proceedings in the District Court

After this Court's decision in *In re: Search Warrant*, and prior to the Superseding Indictment charging Treem, BGL and Treem brought this action against the Insurer in the District Court for the District of Maryland on May 26, 2020. JA 146-68. The case was filed under seal. JA 3 (ECF No. 2).

The Complaint asserted four Counts. Counts I and II were claims by BGL for breach of contract seeking damages for the denial of coverage and a declaratory judgment that the Chubb Policy covered BGL's losses associated with the search and seizure warrant and associated litigation.

JA 160-64. Counts III and IV were claims by Treem for breach of contract for the denial of coverage and declaratory judgment of coverage associated with the Defense Costs incurred in connection with the USAO's written recusal demands and the search and seizure warrant. JA 164-68.

The Insurer filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on July 23, 2020. JA 3 (ECF No. 13). The parties also filed cross motions for summary judgment. JA 5, 6 (ECF Nos. 20, 40). On December 2, 2021, without oral argument, the district court granted the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and denied the summary judgment motions as moot. JA 240-69 (ECF No. 51).

In granting the Insurer's motion to dismiss, the district court held that the Chubb Policy's definition of "Claim" is "unambiguous," JA 252-53, and that the search warrant was not a demand for non-monetary relief triggering coverage under the Chubb Policy. JA 261. It based its ruling, in part, on its finding that the Chubb Policy excludes criminal matters, JA 258, and that grand jury investigations "are not, as a whole, 'written demands' or 'written requests.'" JA 265. It further held that the legal fees incurred as a result of the demands contained in the

13

correspondence from the USAO were excluded from the definition of a covered "Loss" because they were "amount[s] incurred by an Insured in the defense or investigation of any action, proceeding, demand or request that is not then a Claim even if such matter subsequently gives rise to a Claim." JA 267-68. The district court also ruled that the attorneys' fees and costs incurred by BGL and Treem in *In re: Search of Brown Goldstein Levy, LLP*, Case No. 1:19-mj-02155-TCB (D. Md) and *In re: Search Warrant*, Case No. 19-1730 (4th Cir.) were not "Defense Costs" "incurred in defending any Claim" as defined in the Chubb Policy. JA 261-65. Finally, the district court ruled that the definition of "Loss," including "any costs incurred by an Insured ... to comply with an agreement to provide [non-monetary] relief" served to exclude the claim for the attorneys' fees and costs incurred by Treem resulting from the written recusal demands by the USAO. JA 266-67.

On December 30, 2021, the plaintiffs filed a timely notice of appeal of the district court's order granting the Insurer's Rule 12(b)(6) motion to dismiss. JA 270 (ECF No. 52). The district court granted a joint motion to unseal the case on March 23, 2022. JA 7 (ECF No. 58).

## SUMMARY OF THE ARGUMENT

14

The district court was presented with numerous judicial opinions finding that the defense costs associated with governmental investigatory proceedings, grand jury subpoenas, attorney general and agency subpoenas, and search warrants are covered "Claims" because they are written demands or written requests for non-monetary relief. Two such cases directly found coverage for responding to search and seizure warrants like the one at issue in this case.

But the district court denied coverage in the erroneous belief that this and other courts had determined the Chubb Policy language was "unambiguous" in all cases. Its further ruling that the Chubb Policy was limited to civil cases was based on a failure to respect basic rules of grammar and contractual interpretation espoused by the Maryland Court of Appeals, the Supreme Court, this Court, and other authorities.

The central ruling by the district court — that a search and seizure warrant is not a "written demand or written request for … non-monetary relief" — is founded on a mistaken preference:  favoring a questionable decision from the Middle District of Florida together with a decision from the Southern District of New York that has been repudiated by the courts of New York, over diametrically opposite case authority approved by

courts applying Maryland law. At the very least the court should have recognized that given the weight of authority in favor of coverage, the Chubb Policy's language is ambiguous as it relates to demands for "non-monetary relief," and that dismissal for failure to state a claim was inappropriate.

The district court's alternative grounds for dismissal were factually and legally erroneous. Contrary to the district court's decision, BGL's filing of a motion under Fed. R. Crim P. 41(g) and subsequent litigation on appeal to this Court and on remand, was not the elective filing of an affirmative lawsuit — it was a defensive action required of the lawyers, and this Court treated it as such. *In re Search Warrant*, 942 F.3d at 173. Nor was it permissible for the district court to reject the factual allegations of the Complaint and assume that the legal counsel engaged by and for Treem in response to the government's repeated recusal demands were either unnecessary or were "to comply with an agreement to provide nonmonetary relief." Similarly, the district court had no basis to rule, contrary to the allegations of the Complaint, that the government's written recusal demands, and actual litigation over the

16

recusal demands were excluded from coverage because the recusal demands were "not then a claim."

## ARGUMENT

### I.    Standard of Review

This Court reviews *de novo* the dismissal of a Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *E.g.*, *Uncork and Create LLC v. The Cincinnati Ins. Co.,* 27 F.4th 926, 930 (4th Cir. 2022). In doing so, this Court accepts all well-pleaded allegations of the Complaint as true and draws all reasonable inferences in the plaintiffs' favor. *Id.* The interpretation of an insurance policy, including the question of whether the language of a contract is ambiguous, is a question of law subject to *de novo* review. *W.F. Gebhardt & Co., Inc. v. Am. Eur. Ins. Co.,* 252 A.3d 65, 73 (Md. App. 2021).

## II.    The District Court Erred in Dismissing the Complaint Which Stated a Claim Under Maryland Law for Breach of Contract and Declaratory Relief Based on the Insurer's Denial of Coverage.

The Chubb Policy was issued to a Maryland law firm and the district court and the parties recognized that its interpretation is governed by Maryland law. JA 251-52; *see, e.g., TIG Ins. Co. v. Monongahela Power Co.,* 58 A.3d 497, 507 (Md. App. 2012).

"Unlike the majority of other states, Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer." *Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's*, 788 F.3d 375, 379 (4th Cir. 2015)(quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699 A.2d 482, 494 (Md. App. 1997)). Rather, Maryland law applies ordinary contract principles to insurance contracts. *Cap. City*, 788 F.3d at 379. "Nevertheless, under the general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument*." *Id.* (emphasis in the original). "A policy term is considered ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Connors v. Gov't Emps. Ins. Co.*,

18

113 A.3d 595, 603 (Md. 2015)(quotation omitted); s*ee generally,* 12 Maryland Law Encyclopedia, *Insurance* §§ 87, 93 (Dec. 2021 Update) .

The district court erred in its application of these principles. It adopted a reading of the Chubb Policy that is contrary to the plain meaning of the text of the policy and failed to give appropriate deference to prior judicial decisions finding similar claims to be covered by similar policy language. JA 251-61. At the very least, the district court erroneously skipped the necessary analysis to determine whether the Chubb Policy could be read by a reasonably prudent person to provide coverage. Given the multiple prior judicial decisions in favor of coverage, the court erred in holding on a motion to dismiss that there is no ambiguity in the policy language that could provide coverage when the policy is appropriately construed against the Insurer as the drafter of the policy.

## A. The Search and Seizure Warrant on the Law Firm was a "Written Demand or Written Request" for "Non-monetary Relief" Covered by the Chubb Policy.

The government's application for and execution of the search and seizure warrant on the BGL law offices was clearly "a written demand or written request for … non-monetary relief" constituting a "Claim" under

19

the Chubb Policy.[3] JA 25. Not only does an application for a search warrant expressly "request" relief against BGL,[4] and the issued warrant demand compliance, JA 152-54, 160, but the caselaw confirms that search warrants constitute "Claims" under the language used in the Chubb Policy. *See Prot. Strategies, Inc. v. Starr Indem. & Liab. Co.*, No. 1:13-CV-00763, 2013 WL 10724338, at *1–2 (E.D. Va. Sept. 10, 2013)("The Court is persuaded by the reasoning of the many other courts to have recognized that subpoenas and search warrants are "claims" under similar policy language."); *Agilis Benefit Servs. LLC v. Travelers Cas. & Sur. Co. of Am. (Agilis I)*, No. 5:08-cv-213, 2010 WL 11595321, at *11 (E.D. Tex. Feb. 24, 2010)("The search warrants … were 'written demands for non-monetary relief' both according to caselaw and the dictionary definition."), *approved*, *Agilis II,* 2010 WL 8573372, at *7 (E.D. Tex. Apr. 30, 2010)("this approach appears to be the one taken by the majority of the courts"); s*ee also Oceans Healthcare, L.L.C. v. Illinois*

---

[3]     "'[T]he word demand is the largest word in the law, except claim." *Klein v. Fid. & Deposit Co. of Am.*, 700 A.2d 262, 269 (Md. App. 1997)(quoting Lord Coke).

[4]     *In re: Search of Brown Goldstein Levy LLP*, Case No. 1:19-mj-02155-TCB, (D. Md, Jun. 13, 2019), ECF No. 1-2 at 5.

*Union Ins. Co.*, 379 F. Supp. 3d 554, 562 (E.D. Tex. 2019)(applying definition of "Claim" and "relief" found in *Agilis*).

Indeed, numerous decisions — including those applying Maryland law and those whose holdings have been expressly approved by Maryland courts — have held that government issued subpoenas and similar investigatory tools are demands for "non-monetary relief." *See, e.g., Educ. Affiliates Inc. v. Fed. Ins. Co.*, No. CV -JFM-15-1624, 2016 WL 4059159, at *2 (D. Md. July 28, 2016)(Attorney General's "subpoena constitutes a "claim" because it is a 'written demand for … non-monetary relief'"; Motz, J., applying Maryland law); *Syracuse Univ. v. Nat'l Union Fire Ins. Co.*, 975 N.Y.S.2d 370 at *3 (N.Y. Sup. Ct.)("The grand jury's investigations and the subpoena constitute a 'written demand … for non-monetary relief'"), *aff'd*, 976 N.Y.S.2d 921 (N.Y. App. Div. 2013), *cited with approval in Educ. Affiliates*, 2016 WL 4059159 at *2; *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, No. 03-C-6067, 2004 WL 603482 *7 (N.D. Ill. Mar. 22, 2004)(SEC orders and SEC subpoenas), *cited with approval in Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.,* 951 F. Supp. 2d 826, 832-35 (D. Md. 2013) *and Educ. Affiliates,* 2016 WL 4059159, at *2*; Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461, 463 (8th Cir. 1990)(grand jury

investigation beginning with subpoena), *cited with approval in Klein,* 700 A.2d at 276 ("We have no quarrel with the result reached in *Polychron*, because using the 'ordinary meaning' of the term 'claim' that was set forth by the Maryland Court of Appeals … the same result as in *Polychron* might well have been appropriately reached by a Maryland court")); *cf. Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co.*, 828 F.2d 242, 245 (4th Cir. 1987)(grand jury investigation and post indictment proceedings were covered proceedings seeking nonpecuniary relief).

### B.    In Denying Coverage the District Court Relied on Authorities That Are Inconsistent With Maryland Law.

The district court rejected the foregoing decisions that directly held search warrants are "Claims" under the applicable policy language, as well as the reasoning of the majority of cases — including those expressly approved by Maryland courts — holding that government investigative demands and subpoenas are claims for non-monetary relief. Instead, the district court chose to follow two federal district court decisions holding that search warrants are not claims for non-monetary relief. JA 255-56. But examination shows that the district court's reliance on those two decisions was misplaced.

22

The earliest case relied upon by the district court was *Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.*, No. 06-CV-13105, 2008 WL 4613170, at \*4 (S.D.N.Y. Aug. 18, 2008). JA 256. But as subsequent decisions demonstrate, *Diamond Glass* is no longer an accurate prediction of New York law. *See Patriarch Partners, LLC v. AXIS Ins. Co.*, No. 16-cv-2277 (VEC), 2017 WL 4233078 at \*4 n.4 (S.D.N.Y. Sep. 22, 2017)(rejecting *Diamond Glass* as contrary to New York law); *Syracuse Univ.,* 975 N.Y.S.2d 370, at \*3 (citing *MBIA Inc. v Fed, Ins. Co.,* 652 F.3d 152, 160 (2d Cir. 2011)("We reject the insurers' crabbed view of the nature of a subpoena as a "mere discovery device")).

Moreover, the central tenet of the decision in *Diamond Glass* was that the grand jury proceeding at issue did not "target" the insured and therefore did not implicate coverage for a "wrongful act." *Diamond*, 2008 WL 4613179 at \*5.[5] But since BGL's partner Treem was unquestionably

---

[5]    *Contra Syracuse Univ.*, 975 N.Y.S.2d 370, at \*5 ("The plaintiff is not required to prove that it was a named target of an investigation, as defendant contends."); *see generally Oceans Healthcare*, 379 F. Supp. 3d at 563 ("Whether a request is a Claim is a distinct question from whether that request is for a Wrongful Act."); *see also Agilis II*, 2010 WL 8573372 at 6 ("unlike *Diamond Glass*, there has been a least a significant question as to the legality of Plaintiffs' action in this case.")

the "target" of the government's investigation here, as evidenced by (i) the initial conflict letter, JA 51, (ii) the search and seizure warrant, JA 53, (iii) the actual "target letter," JA 55, and (iv) the subsequent indictment, JA 190, the entire rationale for the *Diamond Glass* decision has no application in this case. *See Patriarch Partners*, 2017 WL 4233078 at \*4; *see generally Oceans Healthcare*, 379 F. Supp. 3d at 563 (distinguishing cases where the party issuing the subpoena expressly disclaimed any claim of wrongdoing by the subpoenaed party). The search warrant at issue here directly implicates claims against the insured for an alleged "wrongful act" for which he is expressly the "target." Accordingly, the district court's reliance on *Diamond Glass* is misguided.

The more recent decision relied on by the district court is *RSUI Indem. Co. v. Desai*, No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821, at \*4 (M.D. Fla. Sept. 2, 2014). JA 255. But *RSUI* relied on the *Diamond Glass* decision without recognizing its limitations and the repudiation of its legal principals as a matter of New York law. *RSUI*, 2014 WL 4347821 at \*5. While acknowledging that a search warrant "was arguably a written demand for the production of documents and things," 2014 WL

24

4347821 at *5, it held that "those documents and things were not demanded as redress in response to (or as requital of) a wrongful act." *Id.* In so ruling, the *RSUI* court rejected the majority of decisions of other courts — including those expressly approved by Maryland courts and those applying Maryland law — because they were "not binding." *Id.* at *5 n.5. Of course, the "not binding" critique applies even more forcefully to the decision in *RSUI* because in predicting Florida law the Middle District of Florida made no reference to Maryland decisions and it expressly rejected the caselaw that has been followed and approved in Maryland decisions. *Cf. Klein*, 700 A.2d at 276; *Educ. Affiliates,* 2016 WL 4059159, at *2; *Axis,* 951 F. Supp. 2d at 832-35.

### 1. The District Court's Rejection of Applicable Caselaw Was Unfounded.

Echoing the decision in *RSUI,* the district court in this case sought to distinguish the decisions cited above that held search warrants are written demands for non-monetary relief. JA 260 (discussing *Prot. Strategies*, 2013 WL 10724338 at *2 and *Agilis I*, 2010 WL 11595321 at 2-3). But the district court's distinctions for those decisions simply ignore the express holdings in those opinions.

25

Thus, the district court asserts that *Protection Strategies* is distinguishable because coverage was available under a different clause of the policy that covers criminal proceedings. JA. 260. While it is true that the *Protection Strategies* court held there was coverage under a provision covering criminal proceedings "commenced by service of a complaint or similar pleading," 2013 WL 10724338 at *2, the court was at pains to make clear it found two independent grounds for coverage. "The Court finds that the search and seizure warrant, subpoena and letter constitute a Claim under either Part 1 *or* Part 2 of the definition of Claim in the policy…." *Id.* at *1 (emphasis in original). The court repeated that holding: "The search warrant and subpoena fall within this broad definition as ***both*** written demands for non-monetary relief ***and*** as judicial proceedings commenced by service of a complaint of similar proceeding." *Id.* at 2 (emphasis added). In light of these explicit alternative holdings the district court's efforts to distinguish *Protection Strategies* opinion lacks validity.

Likewise, the district court dismissed the decision in *Agilis*, by asserting that the policy in question in that case included coverage for "criminal proceedings." JA 260. But the actual policy language reported

in the decision included "a criminal proceeding commenced by return of an indictment" within the definitional list for "Claim." *Agilis I,* 2010 WL 11595321 at *7. The court's decision in *Agilis* could not be based on the subsection of the definition of "claim" that included criminal proceedings "[b]ecause no indictment ha[d] been returned." *Id.* In other words, the supposed distinction for *Agilis* proposed by the district court here was unavailable in that case. The holding in *Agilis* was that search warrants were covered claims because they sought non-monetary relief in connection with an alleged wrongful act: an alleged crime. *Id.* at 9-11; *see also Agilis II*, 2010 WL 8573372 at *1 ("the Agilis search warrant stated that the special agent had reason to believe that the items to be seized were evidence of [criminal] violations").

The district court chose to disregard the decisions in *Minuteman* and *Syracuse Univ.* on the grounds that they "involved cases relating to subpoenas." JA at 261. But each of those cases included investigative requests in addition to the subpoenas. *Minuteman*, 2004 WL 603482 *7 (SEC orders and SEC subpoenas); *Syracuse Univ.*, 975 N.Y.S.2d 370 at *3 ("The grand jury's investigations and the subpoena constitute a 'written demand … for non-monetary relief'). Nor is there any reason to

27

reject the reasoning of cases deciding that grand jury subpoenas are demands for non-monetary relief when deciding whether a search and seizure warrant is also a demand for non-monetary relief.

Finally, the district court dismissed the applicability of this Court's decision in *Bornstein* on the grounds that the policy language at issue in that case was different. JA 260-61. True, *Bornstein* construed a policy using the words "non-pecuniary relief," not "non-monetary relief." *Bornstein*, 828 F.2d at 243. But those terms are directly synonymous. *E.g.,* Websters Third New International Dictionary of the English Language Unabridged at 1663 (1986) ("pecuniary" "2: of or relating to money**:** MONETARY").

In *Bornstein* this Court held that a "grand jury investigation and the post indictment proceedings brought against Bornstein were proceedings brought by government regulatory agencies seeking nonpecuniary relief within the meaning of the relevant policy provision." 828 F.2d at 245 (adopting argument "that the grand jury's investigation and its post indictment proceedings constituted proceedings seeking nonpecuniary relief, in that they were instituted for the purpose of imposing criminal liability and criminal sanctions against him.") *Id.* at

244. This Court did not, as the district court would have it, only rule that the grand jury's actions were "proceedings." The Court clearly ruled that the grand jury sought "nonpecuniary relief." *Id.* at 245. There is no reason to disregard this Court's decision in *Bornstein* when interpreting the meaning of the synonymous term "non-monetary relief" as used in the Chubb Policy.

In sum, the district court erred in refusing to follow the well-reasoned opinions of courts that have held search warrants are demands for non-monetary relief as defined in the Chubb Policy, and the opinions — including those expressly approved by Maryland courts — holding that the definition of "Claim" includes grand jury subpoenas and government investigative demands.

### 2. The Chubb Policy Does Not Exclude Written Demands for Non-Monetary Relief Made in Criminal Cases.

Following the analysis employed by the court in *RSUI,* the district court sought to bolster its interpretation of demands or requests for non-monetary relief by reference to the separate subsections of the definition of "Claim."

[N]o reasonable person could read Section (1)(a) of the Policy's "Claim" definition, together with the remaining definitions in

29

> Sections (1)(b) through (1)(c), and conclude that the Search
> Warrant—which was issued in relation to a grand jury
> criminal investigation of Ravenell and Treem—constitutes a
> "written demand or written request … for non-monetary
> relief.");

JA 256; c*f. RSUI*, 2014 WL 4347821 at 5 (citing no authority); *see contra Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, No. 17-cv-8220, 2018 WL 2431969, at \*5 (N.D. Ill May 30, 2018)("each of the policy's subparts offer alternative forms of coverage; they do not limit one another."). The district court therefore held that "the Policy's 'claim' definition limits coverage to 'civil' proceedings." JA 265; *see also* JA 265 ("Grand jury investigations are criminal proceedings…. They are not, as a whole, 'written demands' or 'written requests.'").[6] But the district court's use of separate subsections to limit the coverage for non-monetary demands ignores the express language of the definition of "Claim," the

---

[6]      The district court did not base this holding on any actual exclusion of criminal matters in the policy: the word "criminal" does not appear in the policy at all. JA 17-50. *Cf. W.F. Gebhardt*, 252 A.3d at 76 ("we would expect that if there were an intent to exclude coverage … the Policy would specify that"); *Megonnell v. United Servs. Auto. Ass'n*, 796 A.2d 758, 772 (Md. 2002) ("the insurer must use clear and unambiguous language to distinctly communicate the nature of any limitation of coverage to the insured")(quoting 2 Holmes's Appleman on Insurance, 2d § 7.2 at 276–81 (1996)).

applicable rules of grammar, and the fundamental precepts of contractual interpretation.

First, the district court's opinion ignores the most basic portion of the policy definition which states that the word "Claim" means "***any of the following***:" followed by a list of items included in the definition. JA 25 (emphasis added). This language precludes the modification of one clause in the definition by reference to a separate clause from the list. *See* A. Scalia & B. Garner, Reading the Law: The Interpretation of Legal Texts at 122 (2012)("If the introductory phrase is *any one or more of the following*, then the satisfaction of any one element, or any combination of elements, will suffice."); *see also id.* at 156 ("Scope-of-Subparts Canon"). It is therefore improper to import the word "civil" from a separate subsection to limit the coverage for demands for non-monetary relief.

Second, the district court erroneously used alternative clauses from the definition of Claim — clauses that are separated by semicolons and the terminal word "or" — to limit the meaning of "a demand ... for non-monetary relief." This ignores the disjunctive use of the insuring clauses and is contrary to Maryland law. *E.g., Plank v. Cherneski,* 231 A.3d 436,

31

478-79 (Md. 2020)("'Or' is a conjunction used to indicate an alternative, usually before the last term of a series.")(cleaned up); s*ee, also e.g., Loughrin v. United States*, 573 U.S. 351, 357 (2014)("As we have recognized, that term's ['or'] 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings.'" Quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)); *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 670 (5th Cir. 2015)("The inclusion of 'or' after subpart (c) demonstrates that the exclusion is written in the disjunctive, and each subpart must be considered separately"); *Oceans Healthcare*, 379 F. Supp. 3d at 564 ("each subpart must be considered separately"); *see generally* A. Scalia & B. Garner § 12 at 116 (2012)("with the disjunctive list at least one of the [things] is required, but any one … satisfies the requirement"), *cited with approval in SVF Riva Annapolis, LLC v. Gilroy*, 187 A.3d 686, 692 n.5, 694 (Md. 2018); *cf. Lokhova v. Halper*, No. 21-1655, 2022 WL 1009208, at *3 (4th Cir. Apr. 5, 2022)("or" is "disjunctive").

In short, the district court's assertion that the coverage provided by the Chubb Policy is limited to civil cases has no basis in the text of the Chubb Policy and violates the basic principles of grammar and contract

32

interpretation. It simply rewrites the policy to insert an exclusion that does not exist.

**3.  The District Court Failed to Consider Whether a Reasonably Prudent Person Would Understand the Definition of "Claim" Used in the Chubb Policy Was Susceptible to More Than One Possible Meaning.**

Before deciding that an insurance policy is unambiguous, Maryland law requires a court to determine whether a reasonably prudent person would understand the terms used in an insurance policy as susceptible to more than one possible meaning. S*ee, e.g., Connors*, 113 A.3d at 603. Unfortunately, the district court skipped this step in its analysis. JA 252-53. It did so in reliance on three cases that held that the definition of "Claim" was clear and unambiguous. *Id.* But the fallacy inherent in the district court's opinion stems from the fact that none of the decisions it relied upon involved demands for "non-monetary relief." And none of the cases purport to rule that a reasonably prudent person would not understand the terms used in the Chubb Policy to cover the search and seizure warrant and the other demands at issue in this case. "That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled." *Tucker v. Fireman's Fund*

*Ins. Co.*, 517 A.2d 730, 732 (Md. 1986). The district court failed to recognize this principle.

The first case cited by the district court was *Axis*, 951 F. Supp. 2d 826. JA 252. *Axis* involved email correspondence memorializing a demand for "5 years of severance pay." 951 F. Supp. 2d at 829. The *Axis* court appropriately found: "A reasonably prudent person could not read the Policies and conclude that 'claim' did not encompass written correspondence stating an amount for which an individual would settle a claim." *Id.* at 832. There was no "demand for ... non-monetary relief" at issue in the *Axis* case, and nothing in that decision suggests that the demands made on Treem and BGL are excluded from the definition of "Claim."

The second case cited by the district court was *Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Ins. Co.*, No. 5:10-cv-0167, 2011 WL 6756971, at *5 (N.D.N.Y. Dec. 22, 2011). JA 253. *Schlather* construed an insurance policy that expressly limited its definition of "Claim" to "a demand received by you for money." *Id.; see also id* at 7 ("the unspecified relief requested does not amount to a 'claim' as contemplated by the Policy, which defines 'claim' as 'a demand ... for money,' or the filing of a

34

lawsuit or other proceeding."). Since the policy at issue in *Schlather* did not cover claims for non-monetary relief, it had no occasion to opine on the clarity or scope of the terms employed in the Chubb Policy.

Finally, the district court relied on this Court's decision in *SNL Fin., LC v. Phila. Indem. Ins. Co.*, 455 F. App'x 363, 368 (4th Cir. 2011), for the broad proposition that the definition of "Claim" in the Chubb Policy is unambiguous. JA 253. But the decision in *SNL* did not involve any claim for non-monetary relief akin to the search warrant and other demands made on Treem. To the contrary, this Court (and the district court whose decision was under review) found that two letters sent to SNL did not contain any demands at all. *SNL*, 455 Fed. Appx. at 365-66 ("In neither of his two letters did Schwartz threaten litigation or make a demand, monetary or otherwise, that SNL resolve any potential lawsuit."); *id.* at 368 ("These statements do not include a "demand" for any relief, either monetary or non-monetary."). The court went on to hold that an unsigned, undelivered draft complaint that included an "ad damnum clause [that] sought compensatory and punitive damages in the total amount of $16 million," *id.* at 366, was also not a "demand." Non-monetary relief was never under consideration by the SNL court.

In short, none of the cases that the district court relied upon for its ruling that the definition of "Claim" contained in the Chubb Policy was unambiguous even considered the issues raised in this case. Nor did any of these cases support the proposition that the court could bypass the required analysis of whether a reasonably prudent person would understand the terms used in an insurance policy as susceptible to more than one possible meaning. Skipping the step of assessing the disputed policy language for ambiguity was plain legal error.

### 4. The Conflicting Interpretations in Multiple Judicial Opinions Suggests That the Definition of "Claim" in the Chubb Policy Is Ambiguous and Should Therefore be Construed in Favor of Coverage.

As described above, there is ample judicial support that the policy language covers the search warrant executed against BGL and Treem and the written recusal demands made on Treem. Yet the district court found that the policy language unambiguously did **not** cover the search warrant and the recusal demands. What the district court erroneously failed to consider is whether a reasonable person could read the Chubb Policy to provide coverage, as other courts clearly have. The Court of Appeals of Maryland has set forth the obvious guiding principle in these circumstances:

36

We hold that conflicting interpretations of policy language in judicial opinions is not determinative of, but is a factor to be considered in determining the existence of ambiguity.… [I]f other judges have held alternative interpretations of the same language to be reasonable, that certainly lends some credence to the proposition that the language is ambiguous and must be resolved against the drafter.

*Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 624 (Md. 1995); *see generally* Charles C. Marvel, Annotation, *Division of Opinion Among Judges on Same Court or Among Other Courts or Jurisdictions Considering Same Question, As Evidence That Particular Clause of Insurance Policy Is Ambiguous*, 4 A.L.R.4th 1253 (1981); 16 Williston on Contracts § 49:18 (4th ed., Nov. 2021 Update)("Most courts maintain that a division of judicial opinion is at least evidence of ambiguity. This rule is based on the understanding that one cannot expect a lay person to understand the meaning of a clause when judicial minds are in disagreement.").

If the Chubb Policy is indeed ambiguous when applied to the facts of this case, then the district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) was erroneous. While further litigation might resolve the ambiguity by resort to extrinsic evidence, *e.g., Connors,* 113 A.3d at 603, on a motion to dismiss the court must assume that an ambiguous

37

insurance policy can be read to provide coverage. *E.g., Cap. City*, 788 F.3d at 379.

**C.    The Recusal Letters Were Written Demands or Written Requests for "Non-Monetary Relief" That Were Not Excluded by the Definition of "Loss."**

**1.    The District Court Assumed That the Recusal Letters Were Demands for Non-monetary Relief.**

The district court recognized that the same analysis given to the search and seizure warrants would not support dismissal of Treem's claims based on the government's demands that he recuse himself from his representing various clients. JA 265-66. The district court therefore "assume[d] without deciding" that the various communications from the USAO calling for Treem to recuse himself from specific client representations and inform his clients that he was a "target" of their investigation were "written demands" or "written requests." JA 266. Given the allegations of the Complaint, it would be impermissible to hold that these demands did not satisfy the definition of "Claim." Not only were these written demands, JA 51, 57-58, 84, but the USAO went so far as to seek judicial enforcement of its demands by filing a motion in a pending case requiring Treem's appearance in court and representation by counsel. JA 157. There could not be a clearer example of a written

38

demand for non-monetary relief than an actual demand letter followed by an application to a court for enforcement. *Id.*

> **2. Treem's Legal Fees Incurred as a Result of the Recusal Letters Were Not Excluded From the Definition of "Loss" as Defense Costs "to Comply With an Agreement to Provide Relief."**

Without citing any authority in support of its analysis, the district court relied on the definition of "Loss" as the basis for dismissing Treem's claims for coverage of his defense costs associated with the government's demands. JA 266-67. As defined in the policy, "Loss does not include: … any costs incurred by an Insured to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief." JA 27. The district court's dismissal was based on its finding that Treem's legal fees were "to comply with an agreement to provide such relief." JA 266-67.

But nowhere in the Complaint is there any allegation that the government's multiple recusal demands were based on an "agreement" by Treem to do so. Nor did Treem create the alleged conflicts: the government did. JA 51-59, 84, 156-58, 164. And the Complaint expressly alleges that the government's demands caused Treem and BGL to suffer the loss of covered "Defense Costs." JA 157-59, 165, 167. The court was

not entitled to substitute its speculation about the nature of the work provided by Treem's counsel in place of the allegations of the Complaint when ruling on a motion to dismiss. Fed. R. Civ. P. 12(b)(6). *Uncork,* 27 F.4th at 930.

Moreover, the construction of the Chubb Policy adopted by the district court would produce an absurd result that is contrary to the express language of the policy. *See, e.g. Catalina Ents., Inc. Pension Tr. v. Hartford Fire Ins. Co.,* 67 F.3d 63, 66 (4th Cir. 1995)("It is axiomatic under Maryland law that a court should avoid reading a contract in a way that produces an absurd result, especially when a reasonable interpretation is available."). If, as the district court speculates, Treem received the government's demand and reached an "agreement" with them to comply — which agreement serves to defeat coverage — then whenever a defendant in a lawsuit settled a case by "agreement" they would automatically forfeit their coverage no matter how long and protracted the defense. That would render the basic definition of "Loss," which expressly covers "settlements," illusory. JA 27. The correct reading of the "Loss" definition is what it plainly states: the Insurer will not pay

for the obligations that its Insured voluntarily undertook as a matter of contract. *Id.*

### 3. The Recusal Letters Were Not Excluded From the Definition of "Loss" Because They Make Demands or Requests That Were "Not Then a Claim."

Alternatively, the district court based its dismissal of Treem's claims concerning the recusal letters on the definition of "Loss" that excludes "any amount incurred by an Insured in the defense or investigation of any action, proceeding, demand or request that is not then a Claim even if such matter subsequently gives rise to a Claim." JA 267-68. Again, no authority is provided for this holding, which is contrary to the allegations of the Complaint and the facts the district court professed to "assume."

The exclusion invoked by the district court is obviously intended to insulate the Insurer from demands or requests that have not matured into "Claims" because they have not been set forth in writing. *Compare* JA 25 (definition of "Claim" requiring demands and requests to be in writing; proceedings commenced by service of complaint or similar pleading or "filing of a notice of charges," etc.), *with* JA 27 ("demand or request that is not then a Claim"). But having already "assume[d]

without deciding" that the government's communications constituted "written demands" or "written requests," there is no basis for the district court's ruling that the government's recusal demands had not matured into "Claims." But whether assumed or not, the recusal correspondence and associated litigation were unmistakably written demands for relief, and the district court was required by the standards governing motions to dismiss to accept Plaintiffs' allegations in this regard, *Uncork,* 27 F.4th at 930.

> **D.    The District Court Erred in Dismissing the Complaint on the Grounds that the Plaintiffs' Attorneys' Fees Were Not "Defense Costs" Included in the Policy Definition of "Loss."**

As an alternative to the court's ruling that neither written demands from the USAO nor the search warrant satisfied the definition of "Claim" under the policy, the district court also adopted the Insurer's argument that the attorneys' fees and costs incurred by BGL and Treem in *In re: Search of Brown Goldstein Levy, LLP*, Case No. 1:19-mj-02155-TCB (D. Md) and *In re: Search Warrant*, Case No. 19-1730 (4th Cir.) were not "Defense Costs" "incurred in defending any Claim" as defined in the Chubb Policy. JA 261-64. This holding derives from the district court's factual error — that BGL had filed "an affirmative lawsuit by the

42

Plaintiffs against the Government" to contest the search and seizure warrant. JA 262. But contrary to the description in the district court's opinion, BGL's challenge to the search warrant matter was not "an affirmative lawsuit by the Plaintiffs against the Government." JA 262. Nor did BGL "file[] suit against the government." JA 245; *see also* JA 244 ("The Search Warrant Lawsuit"); JA 263 ("their lawsuit'); *id.* ("The affirmative Search Warrant lawsuit").

A motion in a pending case pursuant to Fed. R. Crim. P. 41(g), is not "an affirmative lawsuit." It is the procedure established by the Rules for a party that has had its property inappropriately seized to challenge and defend against the seizure. Indeed, one need look no further than the caption on this Court's opinion in that litigation to see that the United States was the "Plaintiff" and BGL was the "Defendant." JA 101; *In re: Search Warrant*, 942 F.3d 159. Far from being some optional non-defensive action by the law firm, this Court has already ruled that "in proceedings such as these, lawyers are obliged to protect the attorney-client privilege to the maximum possible extent on behalf of their clients." *In re Search Warrant*, 942 F.3d at 173. And the district court's opinion that the search warrant litigation "in no way 'could defeat or offset

43

liability," JA 263, is directly contradicted by this Court's decision in the very case at issue. *In re Search Warrant*, 942 F.3d at 175 ("In ruling that the Law Firm had not established a likelihood of irreparable harm, the district court erred as a matter of law"); *id.* ("When the pertinent legal principles are properly applied to the unrefuted evidence, the Filter Team's review of the materials seized from the Law Firm was and is injurious to the Firm and its clients. And that harm is plainly irreparable...."), *see also id.* at 175 n.15. There is no basis for the district court's characterization of the search warrant litigation as non-defensive. Nothing in the definition of "Loss" provided proper grounds for dismissal of the Complaint.

## Conclusion

The district court's judgment dismissing the Complaint in this case for failure to state a claim is contrary to Maryland law and the proper interpretation of the Chubb Policy. This Court should therefore reverse the judgment of the district court and remand the case for further proceedings.

Respectfully submitted,

/s/ John Thorpe Richards, Jr.
John Thorpe Richards, Jr.
BOGORAD & RICHARDS PLLC
209 Madison Street, Suite 501
Alexandria, Virginia 22314
Phone:  (703) 457-7820
Fax:  (202) 457-7824

*Attorney for Appellants*
BROWN GOLDSTEIN LEVY LLP
and JOSHUA R. TREEM

## Certificate of Compliance

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of Appellate Procedure, the undersigned counsel for appellants certifies that the accompanying brief is printed in 14-point typeface, with serifs, and including footnotes, contains no more than 14,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, it contains 10,539 words.

/s/ John Thorpe Richards, Jr.

## Certificate of Service

I hereby certify that on April 21, 2022, I electronically filed the foregoing brief and the Joint Appendix with the Clerk of Court using the CM/ECF System which will send notice of such filing to the registered CM/ECF users.

/s/ John Thorpe Richards, Jr.