No. 22-1023

IN THE

# United States Court of Appeals for the Fourth Circuit

———————

BROWN GOLDSTEIN LEVY LLP, *et al*.,

Plaintiffs-Appellants,

v.

FEDERAL INSURANCE COMPANY,

Defendant-Appellee.

———————

On Appeal from the United States District Court
for the District of Maryland (Northern Division), 1:20-cv-01313-TEJ

———————

**BRIEF OF APPELLEE FEDERAL INSURANCE COMPANY**

———————

DAVID NEWMANN
ALEXANDER B. BOWERMAN
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
Fax: (267) 675-4601

MARC A. MARINACCIO
HOGAN LOVELLS US LLP
100 International Drive, Ste 2000
Baltimore, MD 21202
Telephone: (410) 659-5059
Fax: (410) 659-2701

KATHERINE B. WELLINGTON
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston MA 02110
Telephone: (617) 371-1000
Fax: (617) 371-1037

June 22, 2022

*Attorneys for Defendant-Appellee Federal Insurance Company*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __22-1023__    Caption: Brown Goldstein Levy LLP v. Federal Insurance Company

Pursuant to FRAP 26.1 and Local Rule 26.1,

Federal Insurance Company
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO


2.  Does party/amicus have any parent corporations?                ☑YES ☐NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    Chubb INA Holdings Inc.
    Chubb Group Holdings Inc.
    Chubb Limited

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☑YES ☐NO
    If yes, identify all such owners:

    Chubb Limiterd

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Marc Marinaccio _____    Date: _____6/22/2022_____

Counsel for: Federal Insurance Company _____

ii

**Print to PDF for Filing**

# TABLE OF CONTENTS

Page

COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..........1

INTRODUCTION ...................................................................................................1

STATEMENT OF THE CASE...............................................................................1

    I.      FACTUAL BACKGROUND ....................................................1

          A.    The Policy ............................................................1

          B.    The Criminal Investigation .................................3

    II.     PROCEDURAL HISTORY ...................................................6

SUMMARY OF THE ARGUMENT ....................................................8

STATEMENT OF THE STANDARD OF REVIEW ...........................................10

ARGUMENT ........................................................................................................10

    I.      The District Court Properly Dismissed Counts I and II.....................10

          A.    The Search Warrant is Not a Claim Against an Insured..................................................................11

               1.    Section 1(a) Does Not Apply.........................11

               2.    The Claim Definition, Read as a Whole, Forecloses BGL and Treem's Theory......................................................16

               3.    Case Law Supports the District Court's Decision..........23

               4.    BGL and Treem's Ambiguity Arguments Fail...............29

          B.    Costs Arising from the Search Warrant Are Not Covered "Loss."......................................................32

    II.     The District Court Properly Dismissed Counts III and IV.................37

## TABLE OF CONTENTS—Continued

A.    The Conflict Letters Are Not "Claims" Under the Policy............................................................37

B.    Costs Arising from the Conflict Letters Are Not "Loss."..........................................................40

CONCLUSION ..........................................................44

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Agilis Benefit Servs. LLC v. Travelers Cas. & Sur. Co. of Am.*, No.
    5:08-cv-213, 2010 WL 11595321, at \*11 (E.D. Tex. Feb. 24,
    2010), *disposition adopted*, 2010 WL 8573372, at \*7 (E.D. Tex.
    Apr. 30, 2010) .................................................................................28, 29

*Allstate Ins. Co. v. Rochkind*,
    381 F. Supp. 3d 488 (D. Md. 2019) .................................................35

*Andresen v. State*,
    427 U.S. 463 (1976).............................................................14, 15, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................13

*Baltimore Gas & Elec. Co. v. Com. Union Ins. Co.*,
    688 A.2d 496 (Md. App. 1997) ..................................................19, 47

*Bausch & Lomb Inc. v. UTICA Mut. Ins. Co.*,
    625 A.2d 1021 (Md. 1993) ..............................................................19

*Bensalem Twp. v. W. World Ins. Co.*,
    609 F. Supp. 1343 (E.D. Pa. 1985)..................................................40

*BioChemics, Inc. v. AXIS Reinsurance Co.*,
    924 F.3d 633 (1st Cir. 2019).......................................................28, 29

*Cleveland Tr. Co. v. Consol. Gas, Elec. Light & Power Co. of
    Baltimore*,
    55 F.2d 211 (4th Cir. 1932) ........................................................21, 22

*Connecticut Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co.*,
    No. 3:19CV839 (JBA), 2021 WL 4170757 (D. Conn. Sept. 14,
    2021), ), *on reconsideration,* No. 3:19CV839 (JBA), 2021 WL
    5039035 (D. Conn. Oct. 29, 2021). ................................................27

*Connors v. Gov't Emps. Ins. Co.*
    113 A.3d 595 (Md. 2015) ................................................................34

# TABLE OF AUTHORITIES—Continued

Page

*Ctr. for Blood Rsch., Inc. v. Coregis Ins. Co.*,
    No. 01-10708-GAO, 2001 WL 34088617 (D. Mass. Nov. 14,
    2001), *aff'd*, 305 F.3d 38 (1st Cir. 2002)............................................29

*Holding, Inc. v. Starr Indem. & Liab. Co.*, No. 17-cv-8220,
    2018 WL 2431969 (N.D. Ill. May 30, 2018)................................................23, 31

*In re DBSI, Inc.*,
    No. 08-12687 (PYW), 2012 WL 2501090 (Bankr. D. Del. June 27,
    2012) ........................................................................25, 30

*Defs. of Wildlife v. N. Carolina Dep't of Transp.*,
    762 F.3d 374 (4th Cir. 2014) ..............................................................13

*Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.*,
    No. 06-CV-13105, 2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008) ..26, 27, 28, 29

*Educ. Affiliates Inc. v. Fed. Ins. Co.*,
    No. CV -JFM-15-1624, 2016 WL 4059159 (D. Md. July 28, 2016) ................31

*Ellicott City Cable, LLC v. Axis Ins. Co.*,
    196 F. Supp. 3d 577 (D. Md. 2016)............................................................21, 22

*Emp'rs Fire Ins. Co. v. ProMedica Health Sys., Inc.*,
    524 F. App'x 241 (6th Cir. 2013) ........................................................16, 29, 34

*Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.*,
    951 F. Supp. 2d 826 (D. Md. 2013)............................................................*passim*

*Foster v. Summit Med. Sys., Inc.*,
    610 N.W.2d 350 (Minn. Ct. App. 2000)............................................................30

*Gov't Employees Ins. Co. v. Defames*,
    256 Md. 717 (1970) ........................................................................22

*Great West Cas. Co. v. Marathon Oil Co.*,
    315 F. Supp. 2d 879 (N.D. Ill. 2003)............................................................38, 39

## TABLE OF AUTHORITIES—Continued

Page

*Hester v. Navigators Ins. Co.*,
    917 F. Supp. 2d 290 (S.D.N.Y. 2013) ...............................................36

*Holland v. Big River Mins. Corp.*,
    181 F.3d 597 (4th Cir. 1999) ...................................................13, 44

*Holloway v. Maryland*,
    32 F.4th 293 (4th Cir. 2022) ...................................................42, 46

*Hoyt v. St. Paul Fire & Marine Ins. Co.*,
    607 F.2d 864 (9th Cir. 1979) ............................................................42

*Jarecki v. G. D. Searle & Co.*,
    367 U.S. 303 (1961)...........................................................................22

*Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    828 F.2d 242 (4th Cir. 1987) ............................................................31

*Kendall v. Nationwide Ins. Co.*,
    702 A.2d 767 (Md. 1997) ..................................................................19

*Klein v. Fid. & Deposit Co. of Am.*,
    700 A.2d 262 (Md. App. 1997) .........................................................32

*LCS Corr. Servs., Inc. v. Lexington Ins. Co.*,
    800 F.3d 664 (5th Cir. 2015) ............................................................23

*Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders*,
    300 F. Supp. 3d 61 (D.D.C. 2018), *rev'd on other grounds,* No. 18-5276, 2020 WL 3738382 (D.C. Cir. July 7, 2020)...........................................15

*LeRoy v. Kirk*,
    262 Md. 276 (1971) .....................................................................21, 22

*Levy v. Am. Mut. Liab. Ins. Co.*,
    195 Md. 537 (1950) ...........................................................................21

# TABLE OF AUTHORITIES—Continued

Page

*Lokhova v. Halper*,
No. 21-1655, 2022 WL 1009208 (4th Cir. Apr. 5, 2022)...................................23

*Loughrin v. United States*,
573 U.S. 351 (2014)................................................................................................23

*Macke Laundry Serv. Ltd. P'ship v. Alleco Inc.*,
743 F. Supp. 382 (D. Md. 1989)........................................................................24

*Md. Cas. Co. v. Armco, Inc.*,
822 F.2d 1348 (4th Cir. 1987) ...........................................................................19

*Minuteman Int'l, Inc. v. Great Am. Ins. Co.*,
No. 03 C 6067, 2004 WL 603482 (N.D. Ill. Mar. 22, 2004)....................30, 31

*Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*,
962 F.3d 947 (7th Cir. 2020) .............................................................................24

*MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*,
712 F. App'x 745 (10th Cir. 2017) ...............................................................16, 29

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*,
No.CCB-03-3408, 2012 WL 734170 (D. Md. Mar. 6, 2012)...........................20

*Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*,
379 F. Supp. 3d 554 (E.D. Tex. 2019)...............................................................31

*Pac. Indem. Co. v. Interstate Fire & Cas. Co.*,
488 A.2d 486 (Md. 1985) ....................................................................................17

*Patriarch Partners, LLC v. AXIS Ins. Co.*,
No. 16-cv-2277 (VEC), 2017 WL 4233078 (S.D.N.Y. Sep. 22,
2017) ......................................................................................................................26

*Plank v. Cherneski*,
231 A.3d 436 (Md. 2020) ....................................................................................23

*Polychron v. Crum & Forster Ins. Cos.*,
916 F.2d 461 (8th Cir. 1990) .............................................................................31

## TABLE OF AUTHORITIES—Continued

Page

*Porter v. Braskem Am., Inc.*,
    No. 21-1265, 2021 WL 5076362 (4th Cir. Nov. 2, 2021) ................................13

*Prot. Strategies, Inc. v. Starr Indem. & Liab. Co.*,
    No. 1:13-CV-00763, 2013 WL 10724338 (E.D. Va. Sept. 10,
    2013) ................................................................................................23, 28

*Robertson v. Sea Pines Real Est. Cos., Inc.*,
    679 F.3d 278 (4th Cir. 2012) .......................................................................42

*RSUI Indem. Co. v. Desai*,
    No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821 (M.D. Fla. Sept.
    2, 2014) ..........................................................................................*passim*

*Schreiber v. Burlington N., Inc.*,
    472 U.S. 1 (1985) .......................................................................................22

*Shabazz v. Bob Evans Farms, Inc.*,
    881 A.2d 1212 (Md. App. 2005) .............................................................20, 21

*SNL Fin., LC v. Phila. Indem. Ins. Co.*,
    455 F. App'x 363 (4th Cir. 2011) ...........................................................*passim*

*In re Subpoena Duces Tecum v. Bailey*,
    228 F.3d 341 (4th Cir. 2000) .......................................................................14

*Sullins v. Allstate Ins. Co.*,
    667 A.2d 617 (Md. 1995) ............................................................................35

*SVF Riva Annapolis, LLC v. Gilroy*,
    187 A.3d 686 (Md. 2018) ............................................................................23

*Syracuse Univ. v. Nat'l Union Fire Ins. Co.*,
    975 N.Y.S.2d 370 (Sup. Ct. 2013) ..........................................................26, 30

*Towne Realty, Inc. v. Zurich Ins. Co.*,
    548 N.W.2d 64 (Wis. 1996) .........................................................................36

*Trejo v. Ryman Hosp. Props., Inc.*,
    795 F.3d 442 (4th Cir. 2015) .......................................................................13

## TABLE OF AUTHORITIES—Continued

Page

*Tucker v. Fireman's Fund Ins. Co.*
   517 A.2d 730, 731 (Md. 1986) ........................................................34

*UBS Fin. Servs., Inc. of Puerto Rico v. XL Specialty Ins. Co.*,
   929 F.3d 11 (1st Cir. 2019) ............................................................24

*United States v. Garcia*,
   65 F.3d 17 (4th Cir. 1995) ..............................................................37

*United States v. Mandujano*,
   425 U.S. 564 (1976) ........................................................................25

*United States v. White*,
   No. CRIM. PWG-13-0436, 2014 WL 3898378 (D. Md. Aug. 7,
   2014) ........................................................................................37, 38

*United States v. Willis*,
   565 F. Supp. 1186 (S.D. Iowa 1983) ..............................................15

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
   888 F.3d 651 (4th Cir. 2018) .....................................................13, 44

*W. F. Gebhardt & Co. v. Am. Eur. Ins. Co.*,
   252 A.3d 65 (Md. App. 2021) .........................................................23

*Weaver v. Axis Surplus Ins. Co.*,
   No. 13-CV-7374 (SJF)(ARL), 2014 WL 5500667 (E.D.N.Y. Oct.
   30, 2014), *aff'd*, 639 F. App'x 764 (2d Cir. 2016) ........................27

*Windham Solid Waste Mgmt. Dist. v. Nat'l. Cas. Co.*,
   146 F.3d 131 (2d Cir.1998) .............................................................40

*Yadlon v. Cont'l Cas. Co.*,
   No. 06-CV-05617 (FSH), 2008 WL 11510298 (D.N.J. July 17,
   2008) ...............................................................................................39

*Zurcher v. Stanford Daily*,
   436 U.S. 547 (1978) ........................................................................14

## TABLE OF AUTHORITIES—Continued

<u>Page</u>

**Rules**

Fed. R. Crim. P. 41(e)(1) ...............................................................14

**Other Authorities**

Black's Law Dictionary (9th ed. 2004) .................................................13, 14, 23, 27

Relief, Merriam-Webster Dictionary Online, https://www.merriam-
webster.com/dictionary/relief (last visited May 31, 2022)................................17

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of
Legal Texts* (2012) ...............................................................20

## COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Plaintiffs-Appellants Brown Goldstein Levy LLP ("BGL") and Joshua Treem appeal from the District Court's dismissal of their claims for coverage under a lawyers professional responsibility policy (the "Policy") issued by Defendant-Appellee Federal Insurance Company ("Federal"). The issues presented are:

1. Whether the District Court correctly concluded that a search warrant executed at BGL's offices in the course of a grand jury investigation of Treem is not a "written request" or "written demand" for "non-monetary relief" "against an Insured" under the Policy's definition of "Claim."

2. Whether the District Court correctly concluded that the costs incurred by BGL and Treem in pursuing injunctive relief for recovery of documents seized pursuant to the search warrant are not "Defense Costs" or "Loss" under the Policy.

3. Whether the District Court correctly determined that the Policy does not afford coverage for letters from Government attorneys to Treem regarding potential conflicts arising from his representation of criminal defendants while he was under investigation by the grand jury.

## INTRODUCTION

Plaintiffs-Appellants Brown Goldstein Levy LLP ("BGL"), a law firm, and one of its partners, Joshua Treem, represented attorney Kenneth Ravenell in a federal

1

grand jury investigation for laundering illegal drug trafficking proceeds. In the course of that investigation, the Government notified Treem that he had also become a target of the investigation, and it executed a search warrant at BGL's offices in Baltimore. BGL and Treem filed this action in the District Court seeking insurance coverage for the search warrant and the investigation under a "claims-made" lawyers professional liability insurance policy (the "Policy") issued by Defendant-Appellee Federal Insurance Company ("Federal").

The District Court correctly dismissed BGL and Treem's claims because the facts pleaded show that no "Claim" was made against BGL or Treem as defined by the Policy. BGL and Treem contend that the search warrant executed at BGL's offices was a "demand" or "request" for "relief" from BGL under the first part of the Claim definition. But the District Court correctly held that the search warrant was directed to law enforcement officers, not BGL, and thus did not—and under the Fourth Amendment could not—"demand" or "request" anything from BGL. The District Court also correctly held that BGL and Treem's theory cannot be reconciled with the remaining parts of the "Claim" definition. Those parts impose specific restrictions on coverage for any "proceeding," requirements BGL and Treem make no attempt to satisfy. Indeed, as the District Court also held, the "Claim" definition, read as a whole, makes clear that coverage simply does not extend to *criminal* proceedings like a grand jury investigation.

2

Even apart from BGL and Treem's inability to satisfy the Claim definition, the amounts for which they seek coverage are not "Defense Costs" or "Loss" within the scope of the Policy. As to the search warrant, BGL and Treem seek coverage for amounts they incurred not in defense of the search warrant, but to obtain affirmative relief for the recovery of seized documents after the warrant already had been executed. As to the Government's communications with Treem about a potential conflict of interest, Treem seeks recovery of fees charged by the counsel who advised him on his ethical obligations. The District Court correctly held that neither bucket of costs was incurred in defending a "Claim" against either BGL or Treem.

BGL and Treem identify no error in the District Court's ruling. They address little of the District Court's discussion of the nature of search warrants, and their disquisition on non-binding authorities is unavailing. Each one of the cases BGL and Treem cite involved different facts, different policy language, or both. And none contains the kind of thorough analysis of the Fourth Amendment principles underlying search warrants and governing policy language that the District Court performed here. The District Court's ruling should be affirmed.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

#### A.    The Policy

Federal issued Pro Lawyers Professional Liability Policy number 6801-7832 (the "Policy") to BGL for the November 21, 2018 to November 21, 2019 Policy Period. JA.23. Subject to the Policy's other terms and conditions, its main Insuring Clause, which describes the risk assumed by the insurer, provides that Federal "shall pay Loss on behalf of an Insured on account of any Claim first made against such Insured during the Policy Period . . . for a Wrongful Act committed by the Insured before or during the Policy Period." JA.25.[1] The coverage under the Policy extends to "any Insured Person." JA.26. As a BGL attorney, Treem was an "Insured Person." JA.241.

The Policy's "Claim" definition limits coverage to specified demands and proceedings that involve civil remedies. It says in pertinent part that:

Claim means . . . any of the following:

(a)    a written demand or written request for *monetary damages or non-monetary relief*;

(b)    a written demand for *arbitration*;

(c)    a *civil proceeding* commenced by the service of a complaint or similar pleading; or

---

[1] Capitalized terms are defined by the Policy.

1

(d)    a formal *civil administrative or civil regulatory proceeding* (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document,

against an Insured for a Wrongful Act, including any appeal therefrom[.] JA.26 (emphases added).

"Loss" under the Policy includes "Defense Costs," defined as "that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses . . . incurred in defending any Claim." *Id*. The Policy states that "Loss does not include . . . any costs incurred by an Insured to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief," or "any amount incurred by an Insured in the defense or investigation of any action, proceeding, demand or request that is not then a Claim even if such matter subsequently gives rise to a Claim." JA.27.

An addendum to the Policy, the "Lawyers Professional Liability Coverage Enhancement Endorsement," added a new Insuring Clause for "Covered Subpoena Defense Expenses." JA.44, JA.47. It provided that Federal "shall pay on behalf of the Insured a total of up to $35,000 on account of Subpoena Defense Expenses incurred by the Insured as a result of any and all Covered Subpoenas served on the Insured during the Policy Period." *Id.* The endorsement defines "Covered Subpoena" to mean in pertinent part: "a subpoena seeking documents, testimony or other

information from any Insured in connection with Professional Services provided by any Insured, provided that the subpoena does not arise out of any lawsuit to which any Insured is a party[.]" JA.48.

### B. The Criminal Investigation

Kenneth Ravenell, an attorney, engaged BGL and Treem to defend him in a federal racketeering investigation that began in 2014. JA.152. The investigation focused on whether Ravenell had laundered drug trafficking proceeds. *See* JA.64. By letter dated January 11, 2019, the Government advised Treem that he had become "a subject" of the "ongoing grand jury's investigation" of Ravenell and that multiple "nonwaivable conflicts of interest . . . prevent you from continuing to represent" Ravenell in the investigation. *Id*.; *see also* JA.51 (the "Subject Letter").

Following receipt of the Subject Letter, Treem "promptly retained counsel to represent him in connection with the Government's investigation, including, but not limited to, the Government's position that he could no longer represent [Ravenell]." JA.157. BGL and Treem also retained "ethics counsel to advise them with respect to the effect, if any, the Government's investigation and the January 2019 letter might have on [BGL's] other clients." *Id.*

By letter dated June 18, 2019, the Government advised Treem's counsel that Treem had become "a target of the ongoing criminal investigation" of Ravenell and

that "the Grand Jury has substantial evidence linking Treem to the commission of crimes." JA.55, JA.152 (the "Target Letter").

The same day, "more than a dozen federal law enforcement agents executed [a] search warrant" (the "Search Warrant") at BGL's offices. JA.152-153; *see also* JA.106 (stating that "fifteen IRS and DEA agents . . . executed the warrant by conducting a six-hour search of the Law Firm's offices"). The Search Warrant was directed: "To: any authorized law enforcement officer." JA.53. It described the "property to be searched," found "probable cause to search and seize" that property, and stated that the law enforcement officer was "COMMANDED to execute this warrant on or before" June 27, 2019. *Id.*

In executing the warrant, the Government allegedly "demanded cooperation of [BGL] employees" and "demanded that [BGL's] information technology consultant extract electronic records" from BGL's server. JA.154. BGL "objected to the agents on site and to attorneys in the U.S. Attorney's Office by telephone[,]" requesting that the Government limit its search to documents referencing Ravenell, "[b]ut the Government refused this limitation." *Id.* BGL later asked the Government to "return . . . all seized documents so [BGL] could conduct a privilege review" or, "in the alternative, that the Government submit all seized documents to a federal judge for *in camera* review." JA155. The Government refused.

4

BGL then retained counsel and, on June 28, 2019, sought injunctive relief "to halt the Government's review of seized documents[,]" and for "the return of [BGL's] seized materials[,]" pursuant to Federal Rule of Civil Procedure 65 and Federal Rule of Criminal Procedure 41(g). JA.155-JA.156; JA.109. BGL asserted that the Government's "Filter Team" should not be permitted to review the seized materials for privileged information. JA.110. The district court in the injunction proceedings denied BGL's motion on July 11, 2019. JA.111-JA.112. BGL appealed, and this Court reversed and remanded, concluding that the seized materials should be reviewed for privilege by either the Magistrate Judge who authorized the search or a Special Master. *Id.*[2]

By letter dated June 28, 2019, an Assistant U.S. Attorney handling a case against Jay Ledford notified Treem, Ledford's defense counsel, that his representation of Ledford "presents a possible conflict of interest with your personal interests as a target of a federal grand jury investigation also conducted by this Office." JA.57-JA.58 (the "Ledford Letter"), JA.157-JA.158. The letter stated that the Government "believes that defendant Ledford should be advised of the possible

---

[2] BGL and Treem discuss the Government's later indictment of Treem in December 2020, and Treem's subsequent acquittal. Br. 12. Because the superseding indictment was not included in BGL and Treem's Complaint, and BGL and Treem did not amend their Complaint to include it, the District Court did not consider it in ruling on Federal's motion to dismiss. JA.268-JA.269 n.3. BGL and Treem have made no argument that this was error.

conflict" and that, "[i]f defendant Ledford elects to waive the possible conflict, we believe the waiver should be confirmed in court and on the record." JA.57-JA.58, JA.157-JA.158. Treem "accede[d] to" the procedure. *Id*.

## II. PROCEDURAL HISTORY

BGL and Treem requested coverage from Federal for the Search Warrant and grand jury investigation. Federal denied coverage on March 6, 2020. BGL and Treem filed suit on May 27, 2020. JA.146, JA.247. In Counts I and II of their Complaint, BGL and Treem asserted claims for breach of contract and declaratory judgment for what they call the "Search Warrant Claim," which seeks coverage for Losses relating to the Search Warrant and raid. JA.158, JA.160, JA.162. In Counts III and IV, Treem asserted breach of contract and declaratory judgment claims for what he calls the "Partner Claim," which seeks Loss incurred "in connection with the Government's criminal investigation of Treem." JA.158-JA.159, JA.164-JA.165, JA.166-JA.167.

Federal moved to dismiss in July 2020. JA.3. In response, BGL and Treem filed a combined motion for summary judgment and opposition to Federal's motion to dismiss. *Id*. Following discovery, in May 2021, Federal filed a combined reply in support of its motion to dismiss, opposition to BGL and Treem's motion for summary judgment, and its own cross-motion for summary judgment. JA.6.

On December 2, 2021, the District Court granted Federal's motion to dismiss, and explained that it was unnecessary to reach the parties' cross-motions for summary judgment. JA.251. The District Court expressly listed the "exhibits relevant to the Court's disposition of Federal's motion" on which it relied, all of which were "explicitly referenced and relied upon in Plaintiffs' Complaint" and attached to Federal's motion to dismiss. *Id.* (noting reliance on JA.17-JA.50, JA.51-JA.52, JA.53-JA.54, JA.55-JA.56, JA.57-JA.59). After finding, at the outset, that the pertinent policy language was unambiguous, JA.252-JA.253, the District Court dismissed each count of the Complaint.

With respect to Counts I and II, the District Court held that the Search Warrant was not a "Claim" because it did not "demand" any "relief" from BGL. JA.254-JA.261. In so holding, the District Court noted the history and purpose of the Fourth Amendment, relied on judicial authority analyzing similar policy language, and found that the Policy's "Claim" definition "cannot be reasonably read to include the Search Warrant as 'a written demand or written request for . . . non-monetary relief.'" JA.257. As a separate basis for dismissing Counts I and II, the District Court held that none of the costs sought by BGL and Treem were "Loss" as defined by the Policy. JA.261-JA.264. This is because BGL and Treem's legal fees were incurred in pursuit of affirmative injunctive relief, and were not "Defense Costs." JA.263-JA.264.

7

The District Court likewise dismissed Counts III and IV. It rejected BGL and Treem's theories that the criminal investigation of Treem, standing alone, was a "Claim," and that the Subject Letter and Ledford Letter (collectively, the "Conflict Letters") were a "Claim." JA.264-JA.269. As to the first theory, the District Court found that an investigation is not a "written demand" or "written request" as contemplated by the Policy, and that the investigation was not a covered "proceeding" under the Policy. JA.264-JA.265. As to the second, the District Court stated that it was "skeptical" that the Conflict Letters were "written demands" or "written requests" for "relief." JA.266. The District Court went on to hold as a separate basis for dismissal that the costs of retaining ethics counsel in response to the Conflict Letters did not fit within the definition of "Loss" in the Policy. JA.267.

## SUMMARY OF THE ARGUMENT

The Policy provides coverage for "Loss," including "Defense Costs," resulting from a "Claim against [an] Insured . . . for a Wrongful Act." The District Court correctly concluded that the Search Warrant and the Conflict Letters did not fall within these provisions.

As the District Court found, the Search Warrant does not qualify as a "Claim." It was not a "written demand or written request for money damages or non-monetary relief . . . against any Insured." Search warrants protect individuals' Fourth Amendment right against unreasonable searches and seizures. As such, they do not,

and *cannot*, seek "relief" from the individuals subject to search. Moreover, the Search Warrant was issued as part of a *criminal* grand jury proceeding, not one of the specific categories of "civil" proceedings defined as "Claims" in the Policy.

BGL and Treem address little of the principles or policy language on which the District Court based its decision. Instead, they discuss a slew of cases that are neither binding nor persuasive. Only two concerned coverage for a search warrant, and each had distinguishable policy language. BGL and Treem also contend the District Court failed to determine whether the definition of "Claim" is ambiguous, but BGL and Treem sought no such determination below, conceding the definition was *unambiguous*. In any event, the District Court correctly determined that the definition was not susceptible to multiple interpretations. The District Court properly dismissed BGL and Treem's claims as to the Search Warrant.

The District Court also properly dismissed Treem's claims as to the Conflict Letters. Those letters were not "Claims," because they did not "request" or "demand" any "relief." They simply advised Treem of the Government's position and proposed procedures for resolving the conflict issue. The Policy does not cover the Conflict Letters for another reason: The pleaded facts show they did not give rise to covered "Loss." The Policy carves out from the definition of that term "costs incurred by an Insured . . . to comply with an agreement to provide non-monetary relief." The

9

District Court properly found that, because Treem agreed to the Government's conflict procedure, the costs incurred to comply with that agreement are not "Loss."

## STATEMENT OF THE STANDARD OF REVIEW

This Court "review[s] the grant of a motion to dismiss under Rule 12(b)(6) de novo." *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 445-46 (4th Cir. 2015). Factual allegations in the complaint are accepted as true, but this Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]n appellee may defend, and this Court may affirm, the district court's judgment on any basis supported by the record." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (citing *Sloas v. CSX Transp., Inc.,* 616 F.3d 380, 388 n.5 (4th Cir. 2010)). On the other hand, the appellant forfeits issues not raised before the district court, and issues not raised in a party's opening brief are forfeited on appeal. *Holland v. Big River Mins. Corp.*, 181 F.3d 597, 605-07 (4th Cir. 1999); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 666 (4th Cir. 2018); *see also Porter v. Braskem Am., Inc.*, No. 21-1265, 2021 WL 5076362, at *2 (4th Cir. Nov. 2, 2021).

## ARGUMENT

## I.    The District Court Properly Dismissed Counts I and II.

The District Court correctly held that coverage did not extend to either BGL or Treem's claims for coverage of costs related to the Search Warrant and the

ensuing injunction proceedings for two independent reasons. First, the Search Warrant is not a "Claim" within the meaning of the Policy. Second, any costs incurred in the injunction proceedings fell outside the Policy's definitions of "Loss" and "Defense Costs."

### A.  The Search Warrant is Not a Claim Against an Insured.

#### 1.  Section 1(a) Does Not Apply.

The District Court properly concluded that the Search Warrant was not a "written demand or written request for money damages or non-monetary relief" to an Insured under Section 1(a) of the Claim definition. JA.254-JA.261. "Search warrants are not directed at persons; they authorize the search of places and the seizure of things." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978); *see also* Fed. R. Crim. P. 41(e)(1) (magistrate judge "must issue the warrant *to an officer* authorized to execute it" (emphasis added)). Indeed, search warrants are issued "without prior notice" to the person whose property is to be searched. *In re Subpoena Duces Tecum v. Bailey*, 228 F.3d 341, 347-49 (4th Cir. 2000). And, crucially, that person is "*not asked to say or to do anything*[]" in response to a search warrant. *Andresen v. State*, 427 U.S. 463, 472-73 (1976) (emphasis added).

As the District Court explained, the *absence* of notice or opportunity to respond is exactly why a magistrate must issue the search warrant. The warrant must be "drawn by a neutral and detached magistrate instead of being judged by the officer

engaged in the often competitive enterprise of ferreting out crime[,]" so as to avoid "reduc[ing] the [Fourth] Amendment to a nullity and leav[ing] the people's homes secure only in the discretion of police officers." JA.255 (quoting *Johnson v. United States,* 333 U.S. 10, 13-14 (1948)). "Thus, the Fourth Amendment's warrant requirement and the process for obtaining a warrant was not intended to serve as a means by which the Government may obtain any sort of 'remedy' or 'relief' from an adverse party, but was intended as a protection of the peoples' right to be free from unreasonable searches that are not based upon probable cause." *Id.*

The use of the warrant procedure *in lieu of* notices or demands distinguishes search warrants from subpoenas, civil investigative demands ("CIDs"), and other investigative tools where recipients receive notice and an opportunity to respond. *See Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders,* 300 F. Supp. 3d 61, 88-89 (D.D.C. 2018), *rev'd on other grounds,* No. 18-5276, 2020 WL 3738382 (D.C. Cir. July 7, 2020) ("Whereas a search warrant entitles government agents to inspect and/or rifle through targets' 'persons, houses, papers, and effects,' U.S. Const. amend. IV, a subpoena instead directs a target to 'comply' with a 'demand' for information."); *United States v. Willis,* 565 F. Supp. 1186, 1216 n.52 (S.D. Iowa 1983) ("seizure of documents through the use of a search warrant

requires no act of production by the person asserting the privilege while compliance with a summons does.").[3]

Here, consistent with its constitutional underpinnings, the Search Warrant made no "demand" or "request" to BGL or Treem. Instead, it "COMMANDED" an "authorized law enforcement officer," not BGL or Treem, to search and seize the property specified in the Search Warrant for use in a criminal investigation. JA.53. And it was executed in a "raid"—without any prior notice. JA.147-JA.148.

The Search Warrant also sought no form of "relief" from BGL or Treem. "[I]n the legal context, it is well established that relief means '[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court.'" *RSUI Indem. Co. v. Desai*, No. 8:13-CV-2629-T-30TGW, 2014 WL 4347821, at *4 (M.D. Fla. Sept. 2, 2014) (quoting Black's Law Dictionary (9th ed. 2004)); *see also MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*, 712 F. App'x 745, 754-55 (10th Cir. 2017); *Emp'rs Fire Ins. Co. v. ProMedica Health Sys., Inc.*, 524 F. App'x 241, 251-52 (6th Cir. 2013). The same is true in ordinary speech; Webster's dictionary defines "relief" in relevant part as "legal remedy or redress."

---

[3] BGL and Treem are therefore wrong to contend that "there [is not] any reason to reject the reasoning of cases deciding that grand jury subpoenas are demands for non-monetary relief when deciding whether a search and seizure warrant is also a demand for non-monetary relief." Br. 27-28; *see infra* pp. 26-27.

*See* Relief, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/relief (last visited May 31, 2022).[4]

BGL and Treem address almost none of this. They say not a word about the Fourth Amendment. Their attempt to show that the Search Warrant was a "written demand or request for . . . non-monetary relief" relies entirely on extra-record evidence: They cite (without explanation) the Government's *application* for the Search Warrant, which BGL and Treem did not submit in the briefing on Federal's motion to dismiss (only the Search Warrant itself was submitted). *See* Br. 20 n.4 (citing *In re: Search of Brown Goldstein Levy LLP,* Case No. 1:19-mj-02155-TCB, (D. Md, Jun. 13, 2019), ECF No. 1-2 at 5). BGL and Treem have accordingly forfeited any reliance on the application. Regardless, it proves Federal's point: The application is submitted by a law enforcement officer to a magistrate judge to seek authorization for the officer to search and seize evidence. *See* JA.254-JA.255. Granting the application does not establish liability or guilt of the person whose property will be searched; a person whose property is searched and seized is "not

---

[4] Maryland courts consult dictionaries, including Webster's and Black's Law Dictionary, to "accord words their ordinary and accepted meanings." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985).

asked to say or do anything" in response to a search warrant. *Andresen*, 427 U.S. at 472-73.[5]

BGL and Treem assert, without explanation, that "the issued [search] warrant demand[ed] compliance," Br. 20, but point only to allegations in the Complaint that federal agents "demanded" cooperation of BGL employees during the search, including that an information technology consultant extract electronic records. JA.152-JA.154. BGL and Treem do not allege these demands by agents were "written" as required to satisfy Section 1(a) of the Claim definition. Plainly, a "'written demand' requirement cannot be satisfied by an oral communication." *Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.*, 951 F. Supp. 2d 826, 832 (D. Md. 2013).[6]

Moreover, construing "non-monetary relief" in Section 1(a) as BGL and Treem urge would render superfluous the specific Policy provisions (added by

---

[5] The District Court rejected BGL and Treem's argument that the procedure for obtaining a search warrant "mirrors" that for filing a civil complaint. JA.258. Whereas civil actions "are brought to enforce, redress, or protect private or civil rights," search warrants "are not sought by the Government to enforce, redress, or protect any legal rights, but rather are sought to obtain authorization to search a specified place and to seize evidence." JA.259. BGL and Treem do not address this on appeal, either.

[6] In the background section of their brief, BGL and Treem cite an affidavit from BGL's technology consultant. Br. 9 (citing JA.86-87). That affidavit was not attached to the Complaint, or to Federal's Motion to Dismiss. The District Court accordingly did not rely on it in granting Federal's motion to dismiss, and it should not be considered on appeal. JA.251. In any event, the affidavit does not show any "written demand" by federal agents. *See* JA.86-87.

special endorsement) covering certain costs incurred in responding to "a subpoena seeking documents, testimony, or other information from any Insured." JA.44, JA.48. The subpoena endorsement makes clear that Section 1(a) of the Claim definition does not extend to a request for "documents, testimony, or other information from any Insured." If it had, the endorsement (which is expressly labeled a "coverage enhancement," JA.44) would have been unnecessary. By rendering the Policy's subpoena coverage "mere surplusage," BGL and Treem's contrary theory violates basic rules of construction. *Md. Cas. Co. v. Armco, Inc.,* 822 F.2d 1348, 1352 (4th Cir. 1987); *Bausch & Lomb Inc. v. UTICA Mut. Ins. Co.,* 625 A.2d 1021, 1033 (Md. 1993).

Thus, the plain language of Section 1(a) of the Policy supports the District Court's conclusion that the Search Warrant was not a "Claim."

### 2. The Claim Definition, Read as a Whole, Forecloses BGL and Treem's Theory.

As the District Court also held, review of the entire Claim definition bolsters the conclusion that Section 1(a) does not encompass the Search Warrant. Under Maryland law, insurance policies must be analyzed by reviewing the contract "as a whole." *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 771 (Md. 1997). "[E]ffect [must be] given to every clause and phrase, so as not to omit an important part of the agreement." *Baltimore Gas & Elec. Co. v. Com. Union Ins. Co.*, 688 A.2d 496, 503 (Md. App. 1997).

16

Consistent with these principles, the District Court reviewed all of the other parts of the Claim definition, correctly recognizing that they "categorically exclude criminal matters." JA258. Every section of the Claim definition, including Section 1(a) itself, exclusively references demands or proceedings for *civil* relief. "Monetary damages" in Section 1(a) refers to a type of civil relief. *See, e.g.*, *Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1226 (Md. App. 2005) (analyzing a Maryland statute authorizing actions for "*damages*, injunctive relief, *or other civil relief*") (emphasis added)). Section 1(b) defines a Claim as "a written demand for arbitration," which is used "only in the civil context." JA.258. Section 1(c) defines a Claim as "a *civil* proceeding commenced by the service of a complaint or similar pleading." *Id.* And Section 1(d) defines a Claim as "a formal *civil* administrative or *civil* regulatory proceeding . . . commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document." *Id.* No part of the Claim definition, or any other part of the Policy, a lawyers professional responsibility policy, references criminal actions.[7]

---

[7] BGL and Treem acknowledge that "the word 'criminal' does not appear in the Policy at all," and that the District Court's analysis rested on the Claim definition, not on an "exclusion of criminal matters in the policy." Br. 30 n.6. The "[c]lassification of a claim … is a matter of showing *entitlement* to coverage—not a defense or limitation thereto." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, No.CCB-03-3408, 2012 WL 734170, at *2 (D. Md. Mar. 6, 2012).

Reviewing these terms as a whole, the District Court stated what is clear as day: "[N]o reasonable person could read Section (1)(a) of the Policy's 'Claim' definition, together with the remaining definitions in Sections (1)(b) through (1)(c), and conclude that the Search Warrant—which was issued in relation to a grand jury criminal investigation of Ravenell and Treem—constitutes a 'written demand or written request . . . for non-monetary relief.'" JA.258.

Key canons of construction reinforce that analysis. Under *ejusdem generis*, the general terms in Section 1(a) "must be construed" to "mean[] things of the same kind" as "the particular matters referred to" in Sections 1(b), (c), and (d). *Levy v. Am. Mut. Liab. Ins. Co.,* 195 Md. 537, 539-42 (1950); *accord, e.g.*, *Cleveland Tr. Co. v. Consol. Gas, Elec. Light & Power Co. of Baltimore,* 55 F.2d 211, 215 (4th Cir. 1932). Similarly, under *noscitur a sociis*, "the meaning of a word is or may be known from the accompanying words so that, under the rules, general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to less general." *LeRoy v. Kirk,* 262 Md. 276, 283 (1971); *Ellicott City Cable, LLC v. Axis Ins. Co.*, 196 F. Supp. 3d 577, 584 (D. Md. 2016) (same). Thus, as the District Court held, the meaning of "written

demand," "written request," and "non-monetary relief" in Section 1(a) is determined by considering Sections 1(b), (c), and (d).[8]

BGL and Treem contend that the definition's use of "any of," with subparts separated semicolons and the disjunctive "or," somehow renders these canons inapplicable. Br. 31-32. Not so. *See Ellicott City Cable*, 196 F. Supp. 3d at 585 (noting that use of "the disjunctive 'or' . . . does not negate" the principle that "contract interpretation fundamentally favors internal consistency" (citing *Dumbarton Improvement Assoc., Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232-33 (Md. 2013)); *see also Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 7-8 (1985) (applying the "familiar principle of statutory construction that words grouped in a list should be given related meaning," despite use of disjunctive). Courts frequently use *ejusdem generis* and *noscitur a sociis* to interpret lists phrased in the disjunctive. *See, e.g.*, *Gov't Employees Ins. Co.,* 256 Md. at 726; *Cleveland Tr. Co.,* 55 F.2d at 213-14; *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 305, 307 (1961). Moreover, Sections 1(a) to 1(d) of the Claim definition must be read as a class: They appear in the same subpart of the Claim definition and are all modified by the same phrase at the end of that subsection, "against an Insured for a Wrongful Act." JA.25.

---

[8] Maryland law applies these principles regardless whether the more general term appears before or after the more specific terms. *See, e.g.*, *Gov't Employees Ins. Co. v. Defames,* 256 Md. 717, 726 (1970); *LeRoy*, 262 Md. at 278-79; *Cleveland Tr. Co.*, 55 F.2d at 213-14; *Ellicott City Cable*, 196 F. Supp. 3d at 583.

BGL and Treem try to show otherwise by relying (at 31) on Scalia and Garner's *Reading Law: The Interpretation of Legal Texts* (2012). But *Reading Law* does not help them. It addresses an introductory phrase that does not appear in the Claim definition ("any one or more of the following"), *id.* at 122, and it recognizes that the *noscitur a sociis* canon "has tremendous value in a broad array of cases," even where there is no list at all; "[a]n 'association' [of words] is all that is required" for the canon to apply. *Id.* at 196-97. BGL and Treem's other authorities also do not suggest otherwise. They require that disjunctive phrases be given independent meaning; not inconsistent meaning. *See Plank v. Cherneski*, 231 A.3d 436, 478-79 (Md. 2020); *Loughrin v. United States*, 573 U.S. 351, 358 (2014); *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 671 (5th Cir. 2015); *see also, e.g.*, *W. F. Gebhardt & Co. v. Am. Eur. Ins. Co.*, 252 A.3d 65, 74 (Md. App. 2021).[9]

Moreover, BGL and Treem have no response to this fundamental problem: Their construction of the general terms "demand . . . or request . . . for . . . relief" in Section 1(a) would render the specific terms in the rest of Section 1 meaningless.

---

[9] BGL and Treem's other authorities merely support the unremarkable proposition that the word "or" is generally disjunctive. *SVF Riva Annapolis, LLC v. Gilroy*, 187 A.3d 686, 692 n.5, 694 (Md. 2018); *Lokhova v. Halper*, No. 21-1655, 2022 WL 1009208, at *3 (4th Cir. Apr. 5, 2022) ("or" is "disjunctive"). And *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, which involved distinguishable policy language, concluded simply that interpreting one "claim" definition to provide coverage for a subpoena (not a search warrant) did not render another "claim" definition "superfluous." No. 17-cv-8220, 2018 WL 2431969, at *4 (N.D. Ill. May 30, 2018). That is not true here.

Sections 1(b), (c) and (d) each reference specific types of proceedings (arbitration, civil proceeding, and formal civil administrative or civil regulatory proceeding), and identify the types of written documents by which those proceedings must be "commenced." JA26. Yet if the general term "demand . . . or request . . . for . . . relief" created coverage for a formal proceeding like a search warrant or grand jury investigation, the specific requirements of Sections 1(b)-(d) would be essentially written out of the Policy.

To avoid this result, courts apply the "well-settled rule of contract construction that a specific provision will control over a general provision where such provisions are arguably in conflict." *Macke Laundry Serv. Ltd. P'ship v. Alleco Inc.*, 743 F. Supp. 382, 386 (D. Md. 1989) (citing *Fed. Ins. Co. v. Allstate Ins. Co.*, 341 A.2d 399, 407 (Md. 1975)). Consistent with that rule, courts have held that coverage is unavailable under a more "general" claim definition like Section 1(a) where finding coverage would render more specific provisions superfluous. *See, e.g.*, *UBS Fin. Servs., Inc. of Puerto Rico v. XL Specialty Ins. Co.,* 929 F.3d 11, 23-24 (1st Cir. 2019) (declining to apply the "written notice" prong "instead of the more pertinent ones regarding civil proceedings, arbitrations, or investigations," where under the insured's construction "the other prongs would be rendered superfluous"); *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.,* 962 F.3d 947, 954-55 (7th Cir. 2020) (rejecting insured's interpretation of the "written demand" part because it would

21

render "the 'civil proceeding' part of the definition . . . meaningless and superfluous"); *In re DBSI, Inc.*, No. 08-12687 (PYW), 2012 WL 2501090, at *6-7 (Bankr. D. Del. June 27, 2012) ("Nor can the FINRA Investigation be considered a written request for non-monetary relief, as this reading of subsection (1)(a) would make subsection (1)(d) of the D&O Claim definition ['formal administrative or regulatory proceeding'] redundant.").

Here, similarly, coverage for the Search Warrant and grand jury investigation, a "federal judicial proceeding," should be measured against the specific requirements in Sections (1)(b)-(d) for formal "proceedings," not the more general language of Section 1(a). *See United States v. Mandujano*, 425 U.S. 564, 575-76 (1976) (criminal grand jury investigation is a "federal judicial proceeding"). Notably, Section 1(d) expressly contemplates "*the filing of a notice of charges* or similar document" and "the entry of a *formal order of investigation* or similar document," but restricts its scope to "a formal *civil* administrative or *civil* regulatory proceeding." JA.25 (emphasis added). Neither the Search Warrant nor the grand jury investigation can satisfy this or any of the other "proceeding"-specific requirements of Sections 1(b)-(d). BGL and Treem have never argued they do.

BGL and Treem's attempt to sidestep those requirements by expanding Section 1(a) should be rejected. The District Court correctly determined that not only

the plain language of Section 1(a) but also the entire Claim definition read as a whole forecloses BGL and Treem's claim.

### 3. Case Law Supports the District Court's Decision.

The District Court's dismissal of the Search Warrant claim is supported by other decisions considering the applicability of similar insurance policies to search warrants. The District Court relied on *Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.,* No. 06-CV-13105, 2008 WL 4613170, at *4 (S.D.N.Y. Aug. 18, 2008), in which the court, based on Black's Law Dictionary's definition of "relief," concluded that a search warrant did not constitute a claim under policy language similar to the language at issue here: a "written demand for . . . non-monetary relief . . . against an Insured Entity." JA.257. The District Court also relied on *RSUI*, which likewise cited Black's Law Dictionary and concluded that a search warrant was not a demand for "relief" under an analogous policy provision defining claim as "a written demand for monetary or non-monetary relief[.]" JA.256.

BGL and Treem's criticism of *Diamond Glass* and *RSUI* is unfounded. BGL and Treem assert that *Diamond Glass* has been "repudiated by the courts of New York[.]" Br. 15. It has not. BGL and Treem do not cite a single decision from a New York state court discussing *Diamond Glass*; the decision in *Syracuse Univ. v. Nat'l Union Fire Ins. Co.*, 975 N.Y.S.2d 370 (Sup. Ct. 2013), does not even mention it. BGL and Treem cite *Patriarch Partners, LLC v. AXIS Ins. Co.*, No. 16-cv-2277

23

(VEC), 2017 WL 4233078, at *4 n.4 (S.D.N.Y. Sep. 22, 2017), a federal district court decision which indicated in a footnote that it would not follow *Diamond Glass*, but that case involved a request for coverage of a subpoena, not a search warrant. Other courts (including courts applying New York law) follow the reasoning in *Diamond Glass*, belying BGL and Treem's contention that the decision is a dead letter. *See, e.g.*, *Weaver v. Axis Surplus Ins. Co.*, No. 13-CV-7374 (SJF)(ARL), 2014 WL 5500667, at *9 (E.D.N.Y. Oct. 30, 2014), *aff'd*, 639 F. App'x 764 (2d Cir. 2016); *Connecticut Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co.*, No. 3:19CV839 (JBA), 2021 WL 4170757, at *11 (D. Conn. Sept. 14, 2021), *on reconsideration*, No. 3:19CV839 (JBA), 2021 WL 5039035 (D. Conn. Oct. 29, 2021).

BGL and Treem's argument (at 23-24) that "the entire rationale for the *Diamond Glass* decision has no application in this case" is just wrong. BGL and Treem attempt to distinguish *Diamond Glass* because the insured was not a "target" of the grand jury proceeding at issue, which is not the case here—Treem was a "target." Br. 23 (citing *Diamond Glass*, 2008 WL 4613179, at *5). But BGL and Treem refer only to the decision's analysis of a separate claim definition for a person who receives "written notice . . . identifying such insured person as a target." *Diamond Glass*, 2008 WL 4613179, at *5. In analyzing the claim definition relevant here—a "written demand for monetary damages or non-monetary relief"—the *Diamond Glass* court concluded that "based on the ordinary and accepted meaning

of the word 'relief' and the context in which it is used in the Policy it is clear that investigative subpoenas and search warrants are not 'demands for non-monetary relief.'" *Id.* at *4. That reasoning applies here.

As for *RSUI*, BGL and Treem criticize the *RSUI* court for relying on *Diamond Glass*. Br. 24. But a number of courts, including the First Circuit and those mentioned above, agree with *Diamond Glass*. *See BioChemics, Inc. v. AXIS Reinsurance Co.,* 924 F.3d 633, 640 (1st Cir. 2019). BGL and Treem also contend that *RSUI* dismissed the cases BGL and Treem prefer as "not binding," but the *RSUI* court explained how "the majority of these cases are readily distinguishable on their facts, including significant differences in the policy language at issue[,]" and the others "relied on [such] distinguishable case law." 2014 WL 4347821 at *5 n.5.

BGL and Treem's assertion (at 25) that the District Court "reject[ed] applicable caselaw" is unsupported. BGL and Treem point (at 20) to two cases finding coverage for search warrants. Neither applied Maryland law. *See Prot. Strategies, Inc. v. Starr Indem. & Liab. Co.*, No. 1:13-CV-00763, 2013 WL 10724338, at *1-2 (E.D. Va. Sept. 10, 2013) (applying Virginia law); *Agilis Benefit Servs. LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 5:08-cv-213, 2010 WL 11595321, at *11 (E.D. Tex. Feb. 24, 2010) (applying Texas law), *disposition adopted*, 2010 WL 8573372, at *7 (E.D. Tex. Apr. 30, 2010)). As the District Court recognized, both cases involved policies with language distinct from the one at issue

25

here, as they expressly covered criminal proceedings. JA.260. Given the different context, the meaning of the term "non-monetary" relief in those policies is different than in the Policy here. *See supra* pp. 16-23; *see*, *e.g.*, *RSUI*, 2014 WL 4347821 at *4; *MusclePharm Corp.*, 712 F. App'x at 754-55; *Emp'rs Fire Ins. Co.*, 524 F. App'x at 251-52. Most importantly, neither *Protection Strategies* nor *Agilis* addressed the key principles the District Court relied on in determining that a search warrant is not a "written demand or written request for . . . non-monetary relief" from an Insured, including the Fourth Amendment principles behind the warrant requirement. *See supra* pp. 11-15. Thus, the District Court did not err in concluding that these non-binding decisions were not persuasive.[10]

The remainder of the case law that BGL and Treem claim is "applicable" is simply not. None involves search warrants, which are different from subpoenas and other investigative requests, as discussed above. *Supra* p. 13.[11] BGL and Treem

---

[10] Indeed, unlike *Diamond Glass* and *RSUI*, one of the decisions touted by BGL and Treem (*Protection Strategies*) has not been cited by any court in the country.

[11] Notably, many courts have concluded that subpoenas and other investigative requests do *not* constitute a "claim" under analogous policy language. *See*, *e.g.*, *MusclePharm Corp.*, 712 F. App'x at 754-55 (under "plain meaning of 'relief' in 'written demands for non-monetary relief[,]'" SEC investigation "was not seeking relief, but was only gathering information"); *Emp'rs Fire Ins. Co.,* 524 F. App'x at 251-52 (civil investigative demands "sought information related to the FTC's investigation, not a remedy provided by a court[,]" and thus did not seek "relief" under "its common, ordinary, usual meaning"); *BioChemics*, 924 F.3d at 640 (relying on Black's Law Dictionary definition of "relief" and finding that subpoenas did not demand relief); *Ctr. for Blood Rsch., Inc. v. Coregis Ins. Co.*, No. 01-10708-GAO, 2001 WL

contend that *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, No. 03 C 6067, 2004 WL 603482, at *7 (N.D. Ill. Mar. 22, 2004), and *Syracuse University*, 975 N.Y.S.2d 370 at *3, involved "investigative requests in addition to [] subpoenas." Br. 27. *Minuteman* involved "SEC orders and SEC subpoenas," which the court explained were "demands for something due," 2004 WL 603482, at *7, and *Syracuse University* involved a "grand jury's investigations and [a] subpoena," though the opinion does not explain how anything but the subpoenas constitutes a "written demand," 975 N.Y.S.2d 370. Whatever the persuasive value of these decisions, both remain distinguishable. Again, neither involved a search warrant. And the District Court correctly recognized that each case involved different policy language. *See* JA.260 (noting that *Minuteman* and *Syracuse University* policies provided coverage for a "criminal proceeding" seeking "nonmonetary relief").[12]

---

34088617, at *3 (D. Mass. Nov. 14, 2001) ("[A] 'claim' that is a demand for 'relief' seeks 'redress' for a wrong or a 'remedy' in the nature of a court-ordered benefit. An investigative subpoena's demand for the production of documents does not seek redress or a remedy in that sense."), *aff'd*, 305 F.3d 38 (1st Cir. 2002); *Foster v. Summit Med. Sys., Inc.,* 610 N.W.2d 350, 354 (Minn. Ct. App. 2000) ("The SEC's ability to compel production of documents does not fit any reasonable reading of the term 'relief.'"); *In re DBSI, Inc.*, 2012 WL 2501090, at *7.

[12] BGL and Treem (at 21) also rely on *Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.* ("*FINRA*"), 951 F. Supp. 2d 826 (D. Md. 2013), noting that it cited the *Minuteman* decision. The *FINRA* decision did not involve a search warrant, subpoena, or any other investigative request, but rather an attorney's e-mail that clearly stated his client "was asserting a legal claim for employment discrimination and demanding money in any amount equal to his salary for five years to settle that claim," and thus fit within the definition of "claim" under the employment liability policy at issue.

BGL and Treem's discussion of this Court's decision in *Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 828 F.2d 242, 243 (4th Cir. 1987), is a straw man. The District Court properly distinguished *Bornstein*—which, again, did not involve a claim for coverage stemming from a search warrant— because the case involved materially different policy language; the policy at issue provided coverage for "any proceeding or suit brought by any government regulatory agency seeking nonpecuniary relief." JA.260- JA.261 (quoting *Bornstein*, 828 F.2d at 244). BGL and Treem contend on appeal that the District Court based its decision on a distinction between "non-pecuniary relief" and "non-monetary relief." Br. 28. It did not. The distinction between the Policy here and the one at issue in *Bornstein* is that the Policy here requires a "*written demand or written request . . . for non-monetary relief,*" and only covers certain "proceedings," rather than "*any* proceeding." *See supra* pp. 17, 21-22. Those distinctions make the difference.[13]

---

951 F. Supp. 2d at 832. In that context, the court's citation to *Minuteman* (for the notion that a "demand for 'relief' is a broad enough term to include a demand for something due") sheds little light on the issues here. *See id.*

[13] BGL and Treem's others cases are likewise distinguishable based on the language of the policies at issue. *See Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*, 379 F. Supp. 3d 554, 563-64 (E.D. Tex. 2019) (coverage for "a civil, criminal, administrative or regulatory investigation"); *Educ. Affiliates Inc. v. Fed. Ins. Co.*, No. CV -JFM-15-1624, 2016 WL 4059159, at *2 (D. Md. July 28, 2016) ("subpoena" coverage had been added to the "Claim" definition for directors and officers); *Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461, 463 (8th Cir. 1990) (no definition of the word "claim"); *Astellas*, 2018 WL 2431969, at *4 (defining "claim"

Lastly, *Klein v. Fid. & Deposit Co. of Am.*, 700 A.2d 262 (Md. App. 1997), is also distinguishable, but in any event supports Federal. That case again did not involve search warrants or any other kind of government investigation; it involved letters threatening litigation against the insureds. *Id.* at 269-70. And the policy language was materially different, as the term "claim" was not defined. *Id.* Nonetheless, the court concluded that the term "claim" was not ambiguous, as "[t]he word 'claim' is one of those words of many-hued meanings which derive their scope from the use to which they are put," and "reading the policy as a whole" did not support the argument that "letters warning of an intent to take legal action constituted a 'claim.'" *Id.* at 271. Here, too, the District Court correctly analyzed the Policy as a whole and concluded that BGL and Treem failed to establish that the Search Warrant is a "Claim."

### 4.    BGL and Treem's Ambiguity Arguments Fail.

BGL and Treem's remaining attack on the District Court's dismissal of Counts I and II is that the District Court "skipped" a purportedly required "step" of determining whether the Policy is ambiguous. Br. 33. That attack is baseless and contrary to BGL and Treem's position below.

---

to include "formal civil, criminal, administrative or regulatory investigation of an Insured Person").

The District Court properly followed Maryland law in determining that the pertinent Policy provisions are not ambiguous. The Court explained that "Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer. Instead, ordinary principles of contract interpretation apply. Accordingly, if no ambiguity in the terms of the insurance contract exist, a court has no alternative but to enforce those terms." JA.252 (quoting *Megonnell*, 796 A.2d at 771). The Court noted that a "written [contract] is unambiguous if, *when read by a reasonably prudent person, it is not susceptible to more than one meaning.*" *Id.* (emphasis added) (citing *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999)).

Applying these principles, and relying (alongside other precedent) on this Court's decision in *SNL Fin., LC v. Phila. Indem. Ins. Co.*, 455 F. App'x 363, 368 (4th Cir. 2011), which involved "virtually identical" policy language, the District Court found that "the meaning of 'Claim' as it pertains to the Search Warrant Claim . . . is unambiguous." JA.253. The District Court went on to repeat its conclusion that the definition of "Claim" "cannot *reasonably be read* to include the Search Warrant." JA.257 (emphasis added); *see also* JA.261 ("In sum, the Policy in the instant action *cannot be reasonably read* to include coverage for Plaintiffs' costs related to the Search Warrant." (emphasis added)). BGL and Treem are wrong to suggest that the District Court "skipped" any step of the analysis.

30

Moreover, BGL and Treem's attempt to argue ambiguity contradicts their position below. There, BGL and Treem told the District Court: "Courts in this jurisdiction and elsewhere have concluded that th[e] language ['a written demand for non-monetary relief[]'] is unambiguous." ECF No. 20-1, at 2-3. In fact, while BGL and Treem now fault the District Court for relying on this Court's decision in *SNL*, BGL and Treem themselves cited it in the District Court, endorsing its view that "there is 'no ambiguity' in the insurance policy that defined 'claim' as 'a written demand for monetary or non-monetary relief.'" ECF No. 20-1, at 16.

BGL and Treem's newfound rejection of *FINRA* and *SNL* does not pass muster. Not only did *SNL* involve a similar claim definition, it relied on that terminology in reaching its decision. *SNL*, 455 F. App'x at 368 ("these statements do not include a 'demand' for any relief, either monetary or non-monetary"). *FINRA* likewise involved "a written demand against any Insured for monetary or non-monetary relief." 951 F. Supp. 2d at 829. At bottom, several courts have held that search warrants and subpoenas are not covered by policies with analogous language. *See, e.g.*, *RSUI*, 2014 WL 4347821 at *5; *Employers' Fire Ins. Co.*, 524 F. App'x at 246.

BGL and Treem offer no authority to support the contrary conclusion. *Tucker v. Fireman's Fund Ins. Co.*, did not involve interpretation of an insurance policy, much less a "Claim" definition, and says nothing about whether the operative phrase

31

here is ambiguous. 517 A.2d 730, 731 (Md. 1986). The court in *Connors v. Gov't Emps. Ins. Co.* found an insurance policy provision unambiguous even where the parties "spen[t] numerous pages debating the fine points of grammar and the proper labels to give to various clauses." 113 A.3d 595, 606 (Md. 2015).

BGL and Treem contend that the divergent caselaw on subpoenas and search warrants is indicative of ambiguity, citing *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 624 (Md. 1995). Br. 36-37. However, *Sullins* recognized that "conflicting interpretations of policy language in judicial opinions is not determinative of, but is a factor to be considered in determining the existence of ambiguity." 667 A.2d at 624. Moreover, this consideration only comes into play where the divergent courts are interpreting the "same language." *Id*.; *see also Allstate Ins. Co. v. Rochkind*, 381 F. Supp. 3d 488, 513 (D. Md. 2019) (distinguishing *Sullins* where policy language differed). The cases discussed above reached divergent outcomes in large part because they applied different policy language.

In short, the District Court correctly determined that the definition of "Claim" is unambiguous and does not extend to the Search Warrant.

## B.     Costs Arising from the Search Warrant Are Not Covered "Loss."

As an alternative and independent basis for its holding that Counts I and II failed to state a claim, the District Court held that the costs of the injunction proceedings were not "Defense Costs" and therefore not covered "Loss" under the

Policy. JA.261-JA.264. The only costs for which BGL and Treem seek coverage in Counts I and II are the costs incurred in the injunction proceedings, and BGL and Treem do not contend that the costs incurred in those proceedings were any kind of "Loss" besides "Defense Costs." Br. 42-44. Accordingly, the costs can only be covered—and Counts I and II can only state a claim—if the costs meet the definition of "Defense Costs": costs "incurred in *defending* any Claim," with "Claim" defined as certain demands and proceedings "*against* an Insured for a Wrongful Act." JA.26 (emphasis added). These costs do not meet that definition, as they were incurred in BGL and Treem's pursuit of affirmative relief against the Government.

Insurance policies are not meant to cover an insured's pursuit of affirmative relief. *See*, *e.g.*, *Towne Realty, Inc. v. Zurich Ins. Co.*, 548 N.W.2d 64, 69 (Wis. 1996) ("At risk of stating the obvious, a countersuit initiated by the insured cannot logically be a suit seeking damages from the insured."); *Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2013) (no coverage for declaratory judgment action filed "preemptive[ly]" by insured against party who had issued a cease and desist letter). Yet that is what BGL and Treem did here. They filed a motion for emergency equitable relief "to halt the government's review of seized documents" and have them returned to BGL. JA.155-JA.156.

BGL and Treem argue that their request for injunctive relief against the Government was not "an affirmative lawsuit" because the caption for BGL's appeal

33

to this Court labeled BGL as "Defendant" and the Government as "Plaintiff." Br. 43 (citing JA.101). Yet BGL and Treem cannot use the caption created upon issuance of the Search Warrant to change what actually happened after the warrant was executed. As this Court explained, BGL "separately moved in the district court for injunctive relief," and BGL "sought a temporary restraining order and a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the return of seized property, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure." JA.109. This Court thus referred to BGL's efforts not as a defense to the Search Warrant, but as the "Injunction Requests." *Id.*

The fact that BGL and Treem moved for relief under Federal Rule of Criminal Procedure 41(g), in addition to Rule 65, does not make their requested injunctive relief any less affirmative. BGL and Treem contend that "[a] motion in a pending case pursuant to Fed. R. Crim. P. 41(g)" is not "an affirmative lawsuit." Br. 43. But there was no pending criminal case against BGL, nor was any criminal case ever brought against BGL. Notwithstanding the label nominally assigned to BGL upon filing its request for relief under Federal Rule of Civil Procedure 65 and Federal Rule of Criminal Procedure 41(g), BGL's action was affirmative. As this Court has explained, a motion under Federal Rule of Criminal Procedure 41(g) (formerly Rule 41(e)) "for return of property, at least where no criminal proceedings are pending, is a civil action against the United States." *United States v. Garcia*, 65 F.3d 17, 18 n.2

34

(4th Cir. 1995); *see also, e.g.*, *United States v. White*, No. CRIM. PWG-13-0436, 2014 WL 3898378, at *4 (D. Md. Aug. 7, 2014) (Rule 41(g) motion is a "civil equitable action"). Rule 41(g) "incorporate[s] an independent cause of action for third parties [] to move for the return of property if the district court, in its discretion, exercises its general equitable jurisdiction." *White*, 2014 WL 3898378, at *4 (collecting cases).

BGL and Treem's other arguments are unavailing. The District Court properly rejected BGL and Treem's contention that authority finding coverage for "affirmative claims, which, if successful, have the effect of reducing or eliminating the insured's liability" supported coverage for the injunction proceedings. JA.263. As the District Court explained, such cases involve affirmative claims that are "inseparable" from the costs that would be incurred in the underlying defense such that they "could defeat or offset liability," and "[n]o such defensive litigation exists in the context of a search warrant." *Id.* (discussing *Great West Cas. Co. v. Marathon Oil. Co.*, 315 F. Supp. 2d 879, 881 (N.D. Ill. 2003)).

On appeal, BGL and Treem do not explain what kind of liability could have been defeated or offset by the injunction proceedings; the Search Warrant imposed no liability or obligation on BGL and Treem. *See supra* pp. 11-15. Instead, BGL and Treem point to this Court's conclusion, when analyzing their requests for injunctive relief, that BGL and Treem could show a "likelihood of irreparable harm"

35

warranting an injunction to halt the review of privileged materials. Br. 44. But whatever harm BGL and Treem and their clients may have suffered from any review of privileged materials, that is not "liability" on BGL and Treem's part that the Government sought to establish through the Search Warrant that could be defeated or offset with an opposing, affirmative claim. *Great West*, 315 F. Supp. 2d at 881. Indeed, this Court's decision in the injunction proceedings indicated that BGL and Treem should be *granted* relief, not that any claim by the Government against BGL and Treem should fail. *See* JA.139.

BGL and Treem further argue that their request for affirmative relief was not optional because they had an obligation to protect their clients' information. Br. 43-44. Yet that assertion simply confirms they acted for their own independent business reasons, not to defend against the already-executed Search Warrant. The fact that attorneys must take affirmative action to protect clients' rights does not convert such action into a defense of a claim. *Cf. Yadlon v. Cont'l Cas. Co.*, No. 06-CV-05617 (FSH), 2008 WL 11510298, at *3 (D.N.J. July 17, 2008) (no coverage where attorney used his own money to replace stolen client funds).

BGL and Treem filed an affirmative request for relief against the Government—indeed, an equitable action against the Government—seeking (and obtaining) an injunction against the Government. The costs involved in doing so were not "incurred in defending against a Claim." Accordingly, the District Court

properly dismissed Counts I and II on the basis that the costs incurred in the injunction proceedings are not covered "Defense Costs" or "Loss."

## II.    The District Court Properly Dismissed Counts III and IV.

The District Court correctly dismissed Treem's claims for coverage based on the Conflict Letters. The District Court expressed "skeptic[ism]" that these communications were "written demands or written requests for . . . non-monetary relief" sufficient to constitute a "Claim," but regardless found that any costs associated with these communications fell outside the Policy's definition of "Loss." JA.266. The District Court was correct on both fronts.[14]

### A.    The Conflict Letters Are Not "Claims" Under the Policy.

The District Court's skepticism that the Conflict Letters satisfied the requirements of Section 1(a) of the Claim definition was well-founded, JA.266, because they do not contain any "written demand or written request . . . for non-monetary relief." Courts addressing such terms hold that mere assertions of facts or positions do not constitute demands or claims, even if they allege misconduct. "[A]n accusation that wrongdoing occurred is not by itself a claim." *Windham Solid Waste Mgmt. Dist. v. Nat'l. Cas. Co.*, 146 F.3d 131, 134 (2d Cir.1998) (citations omitted);

---

[14] The District Court also dismissed Treem's claim for coverage of the grand jury investigation "as a whole." JA.264-265. Treem does not challenge this ruling on appeal, nor can he, as a grand jury investigation in itself does not satisfy the "written demand" definition or any other part of the Claim definition. *See, e.g.*, *SNL Fin.*, 455 F. App'x at 363; *FINRA,* 951 F. Supp. 2d at 826.

*see also, e.g.*, *Bensalem Twp. v. W. World Ins. Co.*, 609 F. Supp. 1343, 1348 (E.D. Pa. 1985) (EEOC letter was not a claim but "was at most a notice that [a third party] intended to hold [the insured] responsible for a wrongful act," where "[n]either the letter nor the attached charge of discrimination requested money or other relief"); *SNL*, 455 F. App'x at 368 (statement which referred to "certain discriminatory conduct that occurred during the course of his employment with your company" was not a "demand" for any "relief").

The Conflict Letters[15] did no more than advise Treem of the Government's position, and are not "demands" for any kind of "relief." *See* JA.51, JA.57-JA.58.[16] The Subject Letter merely "advise[s] [Treem] that there are multiple nonwaivable conflicts of interest" and asks that Treem "advise [the government] promptly if [he] do[es] not intend to withdraw from [his] representation of Ravenell." JA.51. Likewise, the Ledford Letter noted that Treem's representation of another individual presented a possible conflict of interest. JA.57. The letter then stated the

---

[15] BGL and Treem do not argue that the Target Letter was a "written demand" or "written request" for relief. *See* Br. 38 (discussing JA.51, JA.57-JA.58, and JA.84, but not JA.55). They therefore forfeit any argument that it was.

[16] Treem also seeks to rely a June 29, 2019 e-mail from a Government attorney to Treem. *See* Br. 38 (citing JA.84). That e-mail was not attached to the Complaint or to Federal's motion to dismiss; rather, it was attached to BGL and Treem's summary judgment motion. *See* ECF No. 20-1, at 42 n.16. As such, the District Court did not rely on it in granting Federal's motion to dismiss, and it should not be considered in this appeal. JA.251. In any event, the e-mail merely involves an attorney sharing his interpretation of a case; it includes no request or demand of any kind. JA.84.

Government's view that Ledford "should be advised of the possible conflict" and that, if Ledford "elects to waive the possible conflict[,] . . . the waiver should be confirmed in court and on the record." *Id*. The Ledford Letter closes by requesting that Treem notify the Government how Ledford wishes to proceed. *Id*. These types of communications—a description of one party's position coupled with a request that the other party provide information in response—are not a "demand" or "request" for "relief" as those terms are commonly understood. *See SNL*, 455 F. App'x 363 at 368; *Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864, 865-67 (9th Cir. 1979) (holding that "a request for information and explanation" was not a "claim").

Treem provides no legal authority or factual support demonstrating that the Conflict Letters are "written demands." *See* Br. 38-39. Treem cannot rely solely on bare assertions that these documents contain "written demands"; "[m]ere 'labels and conclusions' will not do," *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022), and "naked assertions devoid of further factual enhancement are not enough." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012). Short on evidence of a "written demand" in the Conflict Letters themselves, Treem asserts that the Government sought "judicial enforcement of its demands by filing a motion in a pending case requiring Treem's appearance in court and representation by counsel." Br. 38 (citing JA.157). This sleight of hand fails: Treem has not argued that any such "motion" is a Claim under the Policy—nor could he, as the Complaint

makes clear that this motion sought no "relief" from Treem. *See* JA.157 ("the Government filed a motion . . . requesting that the Court hold a hearing to question [Treem's] client about [Treem's] purported 'possible conflict' and confirm the client's intentions to continue to be represented by [Treem]"). Regardless, there is no support for the notion that the subsequent filing of a motion or other legal process transforms an earlier letter into a claim. *See SNL*, 455 F. App'x at 368 (draft of complaint that was later filed was not a claim). The Policy says the exact opposite, as the District Court recognized. *See* JA.267 ("Loss" does not include "any amount[s] incurred by an Insured in the defense . . . of . . . any action, proceeding, demand or request *that is not then a Claim even if such matter subsequently gives rise to a Claim*.").

## B.    Costs Arising from the Conflict Letters Are Not "Loss."

In any event, Treem's claims as to the Conflict Letters fail for the additional reason the District Court identified: The costs BGL and Treem incurred in response—costs to retain ethics counsel to "advise [BGL and Treem] with respect to their ethical obligations"—do not satisfy the Policy's definition of "Loss." JA.266.

The Policy defines Loss as "the amount that an Insured becomes legally obligated to pay as a result of any covered Claim, including but not limited to damages, judgments, settlements, . . . and Defense Costs," which, again, are defined as costs "incurred in *defending* any Claim." JA.26 (emphasis added). "Loss" does

*not* include "any costs incurred by an Insured . . . to comply with an agreement to provide [non-monetary] relief." JA.27. The District Court properly found that "the costs to retain ethics counsel were not incurred to 'defend against' [the Government's] purported demands or requests, but rather were incurred to ensure [BGL and Treem] fully complied with their ethical obligations in a manner satisfactory to the Government." JA.266-267. The District Court emphasized BGL and Treem's admission that Treem "promptly acceded to the Government's instructions" in the Conflict Letters, and that there was "no indication that Treem ha[d] at any point disputed the scope of his ethical obligations or otherwise 'defended' against the Government's requests[.]" JA.267. That decision was correct.

BGL and Treem failed to address this issue in the District Court—a failure the District Court noticed. JA.266 ("Plaintiffs' briefs are unresponsive to th[e] argument" that "because Treem 'accede[d]' to the Government's conflict communications, 'any costs incurred . . . to comply with' Treem's accession fall outside the Policy's definition of 'Loss.'"). By failing to brief this issue in the District Court, and then failing to address in their opening brief the District Court's finding that they failed to brief the issue, BGL and Treem have entirely forfeited this issue on appeal. *Variety Stores*, 888 F.3d at 666; *Holland*, 181 F.3d at 605-07.

In any event, the District Court was right: Treem's accession to and compliance with any purported demand or request prevents BGL and Treem from

satisfying the Policy's definition of "Loss." JA.27. Whatever relief BGL and Treem claim the Government was seeking in the Conflict Letters, there is no doubt it was not "monetary" relief. And both the Complaint and BGL and Treem's filings in the District Court indicated Treem "accede[d] to the Government's instruction." JA.157-158; *see* JA.267 (citing ECF No. 20-1, at 25). Treem's "agreement" to provide whatever non-monetary relief the Government purportedly sought in the Conflict Letters means that "any costs incurred . . . to comply with" that agreement falls outside the Policy's definition of "Loss." JA.27.

BGL and Treem argue that the District Court impermissibly "substitute[d] its speculation about the nature of the work provided by Treem's counsel in place of the allegations of the Complaint." Br. 39-40. It did no such thing. The District Court relied on the exact description given by BGL and Treem. *Compare* JA.158-159 ("The Partner Claim includes costs Law Firm and Partner incurred in connection with engaging ethics counsel to advise them with respect to the effect, if any, the Government investigation and demands on Law Firm and Partner might have on Law Firm's other clients."), *with* JA.266 ("[T]he costs Plaintiffs incurred from their retention of ethics counsel to advise them with respect to their ethical obligations in light of the Government's conflict communications are squarely and explicitly excluded from the Policy's 'Loss' definition.").

42

BGL and Treem also contend that applying this carve-out from the "Loss" definition would lead to the "absurd" result that any settlement or agreement would "forfeit" all coverage. Br. 40-41. Wrong again. The carve-out expressly only applies to agreements for "non-monetary relief," and therefore is not implicated by payment of a monetary settlement. *See* JA.27. The carve-out also applies to costs incurred in "comply[ing]" with an agreement or order for non-monetary relief, not to Defense Costs incurred in negotiating the agreement.

Regardless, BGL and Treem's costs to retain ethics counsel are not "Loss" for an independent reason: Because the costs were not incurred to "defend against" the Conflict Letters, they are not "Defense Costs." *See* JA.266-267. BGL and Treem do not address this part of the District Court's conclusion at all. BGL and Treem simply urge the Court to focus only on their allegation that they "suffer[ed] the loss of covered 'Defense Costs.'" Br. 39. But a conclusory allegation that something constitutes "Defense Costs" does not make it so, especially when specific factual allegations show otherwise. *See Holloway*, 32 F.4th at 298. Thus, the District Court did not err in dismissing Counts III and IV for failure to show covered "Loss."

## CONCLUSION

For the foregoing reasons, the District Court's judgment should be affirmed.

June 22, 2022

Respectfully submitted,

/s/ *Marc A. Marinaccio*

DAVID NEWMANN
ALEXANDER B. BOWERMAN
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
Fax: (267) 675-4601

MARC A. MARINACCIO
HOGAN LOVELLS US LLP
100 International Drive, Ste 2000
Baltimore, MD 21202
Telephone: (410) 659-5059
Fax: (410) 659-2701

KATHERINE B. WELLINGTON
HOGAN LOVELLS US LLP
125 High St., Suite 2010
Boston MA 02110
Telephone: (617) 371-1000
Fax: (617) 371-1037

*Counsel for Defendant-Appellee Federal Insurance Company*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,496 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point font.

*/s/  Marc A. Marinaccio*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered users of the CM/ECF system.

*/s/ Marc A. Marinaccio*